Dorothy Ann WILSON, etc., et al.,
Plaintiffs, Appellants,

v.

HAMMER HOLDINGS, INC.,
Defendant, Appellee.

Dorothy Ann WILSON,
Plaintiff, Appellant,

v.

HAMMER HOLDINGS, INC.,
Defendant, Appellee.

Nos. 87–1960, 87–1961.

United States Court of Appeals,
First Circuit.

Heard Feb. 1, 1988.
Decided June 20, 1988.

**4**

William Shields with whom Cindy A. O'Connor and Day, Berry & Howard, Boston, Mass., were on brief for plaintiffs, appellants.

Darragh K. Kasakoff with whom Seder & Chandler, Worcester, Mass., was on brief for defendant, appellee.

Before COFFIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and PETTINE,* Senior District Judge.

COFFIN, Circuit Judge.

In 1961, appellant Dorothy Wilson and her late husband, John, paid more than $11,000 to the Hammer Galleries for a painting that was expressly guaranteed to be an original work of art by Edouard Vuillard. In 1984, an expert deemed the painting a fake. The district court held that the Wilsons' suit for breach of warranty and negligence, filed in February 1987, was barred by the statute of limitations. We affirm.

### I.

When Dorothy and John Wilson purchased the painting entitled "Femme Deb-

out" from the Hammer Galleries in 1961,[1] they were assured in writing that "[t]he authenticity of t[his] picture is guaranteed." Twenty-four years later, they had the painting examined by an expert in preparation for selling it. The expert determined that the painting was not by the French artist Vuillard, and he refused to authenticate it. The Wilsons returned the painting to Hammer and, on February 13, 1987, filed this action seeking damages for breach of warranty and negligence.[2]

The district court granted summary judgment for Hammer on the ground that the Wilsons had failed to file their lawsuit within the applicable statute of limitations. 671 F.Supp. 94. The court held that an action for breach of a warranty of authenticity accrues at the time of sale of the painting, and that the Wilsons' action therefore was barred by the four-year statute of limitations in Mass.Gen.Laws Ann. ch. 106, § 2–725. The court also concluded that another limitations statute with a different limitations period and accrual method, Mass.Gen.Laws Ann. ch. 106, § 2–318, did not apply to the Wilsons' breach of warranty claim. Finally, the court rejected the Wilsons' attempt to characterize their claim alternatively as a negligence action subject to the timing and method of accrual of the Massachusetts tort statute of limitations, Mass.Gen.Laws Ann. ch. 260, § 2A.

The Wilsons argue on appeal that the district court improperly construed and applied Massachusetts statute of limitations law, and they ask us to find that their action was timely filed. The Wilsons rely on three separate statutory provisions, and we shall discuss each in turn.

### II.

The Massachusetts statute of limitations for breach of a sales contract is set out in Mass.Gen.Laws Ann. ch. 106, § 2–725. That section provides that

---

* Of the District of Rhode Island, sitting by designation.

1. The defendant-appellee Hammer Holdings, Inc., is a successor of Hammer Galleries, Inc.

2. John Wilson died on December 31, 1985, and the action actually was filed by Dorothy Wilson, individually, and Dorothy Wilson, Richard Wilson and Edward Condit, as executors of the will of John Wilson. For the sake of simplicity, we shall refer to appellants as "the Wilsons."

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued....

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

There is no question that the Wilsons' action was untimely under this statute if it accrued at the time they purchased the painting and received the warranty because those events occurred twenty-six years before suit was filed. The Wilsons therefore contend that this case falls within the exception to section 2–725(2), and they argue that their cause of action accrued upon their discovery in 1985 that the painting was not authentic.

The district court found the exception in section 2–725(2) to be inapplicable because Hammer's warranty made no explicit reference to future performance as required by the statute. The Wilsons do not argue that the district court erred in reading the warranty to lack an explicit promise of future performance. Rather, they argue that a warranty of authenticity of a painting *necessarily* relates to the future condition of the artwork despite the absence of explicit language to that effect, and, for that reason, they claim that the exception in section 2–725(2) should apply to them.

Section 2–725(2) refers to a warranty of "future performance," and so the Wilsons' theory depends first on extending the concept of a "performance" to a painting. They concede that paintings, unlike consumer goods like automobiles and washing machines, generally are not purchased based on how they "perform" or "function." They suggest, however, that a painting "performs" "by being what it [is] represented to be," *Lawson v. The London Arts Group*, 708 F.2d 226, 228 (6th Cir.

1983). In this case, they say, "Femme Debout" could "perform" only by being an authentic Vuillard.

Accepting at least for the sake of argument that a painting does "perform" by being genuine, the question then becomes whether Hammer's express warranty of authenticity not only guaranteed the present "being" of the painting as an authentic Vuillard but also extended, as required by section 2–725(2), to the future existence of the painting as a Vuillard. On this point, the Wilsons argue that because the authenticity of a painting does not change over time, Hammer's warranty "necessarily guaranteed the present *and* future existence of the Painting as an authentic Vuillard." (Emphasis in original.) Therefore, they contend, explicit words warranting future performance would be superfluous in this context.

The Wilsons' argument is persuasive if one's goal is to furnish protection for art buyers equivalent to that provided expressly by section 2–725(2) to purchasers of other types of goods. Art buyers almost certainly would fail to secure a separate explicit warranty of "future performance" because a warranty that promises authenticity "now and at all times in the future" would be redundant. Therefore, it is appealing to argue that, in the circumstances of this case, the exception in section 2–725(2) should be triggered by any warranty of authenticity, which must be understood as at least an *implicit* promise of future performance.

Our difficulty with this argument, however, is that it asks us to ignore the literal language of the statute requiring an *explicit* promise of future performance. The Wilsons argue essentially that because the statutory exception's requirement of an explicit prospective warranty does not make sense in the context of the sale of paintings, we should dispense with that requirement. We are reluctant, however, to waive the specific eligibility requirements established by the legislature for what, it must be remembered, is an *exception* to the gen-

eral limitations rule.[3]

Even accepting that Hammer's warranty *implicitly* promised future performance, the Wilsons' situation simply does not fit within the literal boundaries of the exception carved out by the Massachusetts legislature to the standard four-year statute of limitations for breach of contract actions. *See Stumler v. Ferry–Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir.1981) ("The mere expectation, however reasonable, that due to the type of product involved the statute of limitations on the warranty claims would not begin to run until discovery of the defect rather than upon delivery does not fit such a claim into the exception to the general rule.") (language reprinted from district court opinion.) Our feeling is that if there is to be an exception to the requirements of the exception, it should be up to Massachusetts lawmakers to design it.[4]

We need not finally decide this issue,[5] however, because even if we were to accept the Wilsons' argument that Hammer's warranty necessarily extended to future performance of the painting, and thus met the prospective warranty requirement of section 2–725(2), we nevertheless would conclude that their action is time-barred. The statute also requires that discovery of the breach *"must* await" the time of such future performance. That is not the case here. Because of the static nature of authenticity, the Wilsons were no less capable of discovering that "Femme Debout" was a fake at the time of purchase than they were at a later time.

The Wilsons, however, argue that it is commercially unreasonable and unfair to insist upon a strict interpretation of the discovery element of section 2–725(2) in the context of art sales. They contend that art buyers usually pay for the expertise of an art dealer when purchasing a work of art, with the expectation that the professional will stand behind the promise of authenticity. Thus, they argue, art purchasers should not be required to pay a second expert to verify the work of the first one in order to preserve their rights to sue for breach of warranty at some later time. Therefore, when an art buyer has no reason at the time of purchase to question the authenticity of the painting—perhaps because it was sold by a reputable, professional dealer—the Wilsons would require only that the breach await, rather than *necessarily* await, future performance. In

3. We note that the illogic may result from the more basic fact that the exception in section 2–725(2) does not apply when a product does not "perform" in the usual sense of the word. *Cf.* Mass.Gen.Laws Ann. ch. 106, § 2–312, Comment 2 (under section 2–725, "the breach of warranty of good title occurs when tender of delivery is made since the warranty is not one which extends to 'future performance of the goods' ").

4. In support of their position, appellants point to two cases in which they claim courts have inferred a warranty of future performance that was not specifically stated in the warranty language. However, in both *Mittasch v. Seal Lock Burial Vault, Inc.*, 344 N.Y.S.2d 101, 42 A.D.2d 573 (1973), and *Moore v. Puget Sound Plywood, Inc.*, 214 Neb. 14, 332 N.W.2d 212 (1983), the courts decided that express warranties given to the purchasers did *explicitly* extend to future performance of the items purchased. In *Mittasch*, the warranty for a burial vault promised "satisfactory service at all times." 344 N.Y.S.2d at 103. In *Moore*, the parties agreed that "the description of the goods as 'siding' carried with it the representation that it would last the lifetime of the house," 332 N.W.2d at 214–215. This representation, according to Nebraska law, created an express warranty that the goods would conform to the description, resulting in the court's conclusion that the defendant seller had promised future performance, specifically during the lifetime of the house. *Id.*

The Wilsons emphasize the court's statement in *Mittasch,* 344 N.Y.S.2d at 103, that "the very nature of the product" suggested future performance in support of their argument here that the nature of a painting's authenticity requires a finding that any warranty applies prospectively as well as presently. We view this statement simply as the *Mittasch* court's confirmation of its conclusion that the language "satisfactory service at all times" was intended an an explicit promise of future performance.

5. The Wilsons argue that, even if we disagree with their view of the facts establishing a prospective warranty, we should at least find that the warranty was sufficiently ambiguous to create questions of fact that should be resolved by the jury, making summary judgment improper. We see this as a question of law—whether an implicit warranty of future performance would satisfy the requirement of section 2–725 in the circumstances of this case. In any event, our decision does not turn on this issue.

this case, the Wilsons had no reason to doubt the authenticity of "Femme Debout" until they prepared to sell the painting in 1985.

Again, the Wilsons' arguments are not without some appeal. But they are made more appropriately to the Massachusetts legislature than to us. We have no doubt that the legislators who crafted section 2-725 gave no thought to the concept of a "performing" work of art. The present statutory language undoubtedly was designed for instances in which goods contain a latent defect at the time of purchase that does not cause the goods to break down until some later time. In such circumstances, the buyers can not know of the breach until the product starts to "mis"perform.

What the Massachusetts legislature would have done had it considered the plight of art purchasers is a matter of pure speculation. It might have changed the language of section 2-725(2) so that the exception would apply to consumers of art in the circumstances of this case. It might have enacted an entirely separate provision concerning the breach of a warranty of authenticity. *Cf., e.g.,* Michigan's Warranty in Fine Arts Statute, Mich.Comp.Laws Ann. § 442.322-324; N.Y.Gen.Bus.Law § 219-c. Or it might have done nothing because its concern was for consumers of products whose performance could change with time as the result of a hidden defect.

At present, however, the exception to the statute is inapplicable to the facts before us. In this case, the product's "performance" never changed. The painting failed to exist as a Vuillard as much at the time of purchase in 1961 as at the time the Wilsons discovered its true nature in 1985. Although the Wilsons were unaware of the painting's faulty performance until they attempted to sell the work of art, they easily *could* have discovered the problem from the outset by means of a second expert opinion. Moreover, in the ordinary case—in the absence of an explicit promise of future performance—a cause of action *is* lost after four years "regardless of the aggrieved party's lack of knowledge of the

breach," Mass.Gen.Laws Ann. ch. 106, § 2-725(2).

Our reluctance to enlarge the scope of the exception in section 2-725(2) is strengthened by the recognition that the Wilsons' approach would mean that the statute of limitations for art buyers could run indefinitely. Indeed, in this case suit was filed 26 years after the purchase. Although Massachusetts legislators may choose to provide perpetual protection for consumers of artistic products, it would be presumptuous for us to assume that they would. Moreover, we think it more likely that, if Massachusetts chooses to extend protection to art buyers in the way the Wilsons suggest, the legislature would fix some endpoint to the seller's possible liability—perhaps similar to the 20-year limitations period for an action seeking the recovery of land. *See* Mass.Gen.Laws Ann. ch. 260, § 21.

In sum, then, we conclude that the Wilsons' cause of action for breach of a warranty of authenticity does not fall within the exception to section 2-725(2), and therefore accrued at the time of sale in 1961. As a result, it is barred by section 2-725's four-year statute of limitations.

### III.

The Wilsons also rely on Mass.Gen.Laws Ann. ch. 106, § 2-318, which eliminates the privity defense in breach of warranty and negligence actions, and states that "[a]ll actions under this section shall be commenced within three years next after the date the injury and damage occurs." The plaintiffs contend that the injury in this case occurred in 1985 when the expert deemed the painting a fake.

We agree with the district court's conclusion that section 2-318 is inapplicable to this case primarily for the reason that court expressed, namely, that section 2-318 is designed to cover breach of warranty actions that are in essence products liability actions, and is not designed as an alternative for contractually based warranty

claims.[6] *See Back v. Wickes Corp.*, 375 Mass. 633, 639, 378 N.E.2d 964 (1978) (discussing section 2–318 and its role in transforming warranty liability into equivalent of a products liability theory); *Hoffman v. Howmedica, Inc.*, 373 Mass. 32, 364 N.E.2d 1215 (1977). *See also* W. Prosser, *Law of Torts* 641 (4th ed. 1971) (products liability involves the liability of sellers of goods to third persons with whom they are *not* in privity of contract).

We need not decide in what circumstances section 2–318 would be applicable.[7] It suffices to say here that when a plaintiff alleges a cause of action based on his or her failure to receive goods that conform to the contract of sale between the parties, section 2–725 provides the only applicable breach of warranty statute of limitations. To hold that section 2–318 offers an alternative limitations period for a contractually based breach of warranty claim would, as the district court noted, frustrate section 2–725 and create an inconsistency that Massachusetts law would not condone. *Cf. Hendrickson v. Sears*, 365 Mass. 83, 85, 310 N.E.2d 131 (1974) ("limitation statutes should apply equally to similar facts regardless of the form of proceeding"). This is not a case in which the plaintiff has alleged two distinct theories of warranty liability. The Wilsons simply seek to take advantage of an alternative that they perceive to be more beneficial to their claim.[8]

We conclude that they do not have this choice.[9]

## IV.

■ The Wilsons also allege a negligence claim in their complaint, arguing that the gallery was negligent in failing to recognize "Femme Debout" as a fake. Tort actions generally are governed by the statute of limitations in Mass.Gen.Laws Ann. ch. 260, § 2A, which provides that causes of action based on tort must be filed within three years after they accrue. The time of accrual for tort claims has been left for judicial determination and varies depending upon the nature of the action. *See, e.g., Hendrickson*, 365 Mass. at 91, 310 N.E.2d 131 (cause of action against attorney for negligent certification of title to real estate accrues when misrepresentation is, or reasonably should have been, discovered); *Cannon v. Sears, Roebuck & Co.*, 374 Mass. 739, 742, 374 N.E.2d 582 (1978) (products liability cause of action accrues at time of injury). The Wilsons suggest that accrual for their negligence claim should be based on a discovery rule under which the cause of action would not have accrued until the Wilsons knew or reasonably should have known that the painting was not a genuine Vuillard.

We need not consider the question of accrual because we agree with the district court that the Wilsons' negligence claim

**6.** *See* Part IV, *infra,* for a discussion of the Wilsons' tort claim.

**7.** In particular, we need not consider whether section 2–318 is applicable when a plaintiff seeks breach of warranty damages only for economic loss and not for physical injuries. We note, however, that the Comment in connection with the 1973 amendment of section 2–318 suggests that that section should have a three-year statute of limitations so that it would be consistent with the period for tort actions and actions of contracts to recover for personal injuries. We view this as an indication that at least the primary purpose of section 2–318 is to govern actions involving personal injuries, which is the dominant aspect of products liability cases.

**8.** The district court held that even if section 2–318 applied, the Wilsons still would be barred from bringing a breach of warranty action because the relevant injury occurred in 1961 when they purchased a painting that was not as valu-

able as they believed it to be. The court concluded that "the clear terms" of section 2–318 therefore barred them from bringing an action more than three years after the purchase. We do not decide the question of when the injury occurred.

**9.** In support of their argument that section 2–318 applies to actions arising from the receipt of nonconforming goods under a contract, the Wilsons point to two cases "where the Courts make reference to each statute of limitations in connection with breach of warranty claims." Appellants' Brief at 34 n. 20. However, in both *Montaup Electric Co. v. Ohio Brass Corp.*, 561 F.Supp. 740, 747 n. 7 (D.R.I.1983), and *Salinsky v. Perma–Home Corp.*, 15 Mass.App. 193, 199 n. 9, 443 N.E.2d 1362 (1983), the courts indicate that only one of the statutes to which they refer is, in fact, applicable.

suffers from a more basic problem—it simply is not in the nature of a negligence cause of action. As the district court stated, "the essence of the action is to recover money under a sales contract for goods that did not conform to the contract. In such instances, the U.C.C. governs the expectations and duties of the buyer and seller."

We have found only one Massachusetts case in which a buyer brought a negligence claim based on the defective nature of a product at the time of sale. *Omni Flying Club, Inc. v. Cessna Aircraft Co.*, 366 Mass. 154, 315 N.E.2d 885 (1974). In that case, however, the Supreme Judicial Court did not discuss whether it was proper to bring such a claim in negligence. Noting the SJC's silence on this issue, a Massachusetts appeals court subsequently declined to regard *Omni Flying Club* as precedent on that point and ruled that a purchaser of a product who claims only economic loss or damage caused by the product to itself is limited to UCC remedies and may not maintain an action for negligence. *See Marcil v. John Deere Industrial Equipment Co.*, 9 Mass.App. 625, 631–32 and n. 4, 403 N.E.2d 430 (1980). *See also New England Power Co. v. Riley Stoker Corp.*, 20 Mass. App. 25, 35, 477 N.E.2d 1054, 1061 (1985) (citing *Marcil*).[10]

The Wilsons, who make no reference to *Omni Flying Club*, instead argue that this case is closely analogous to *Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974), in which the court held that the discovery rule of accrual applies to a client's cause of action against an attorney for negligent certification of title to real estate. The Wilsons urge us to view their claim as one involving an alleged defect in Hammer's certification of the authenticity of the painting, and thus as equivalent to *Hendrickson*. Then, invoking the SJC's endorsement of the view that limitations statutes "should apply equally to similar facts regardless of the form of proceeding," *Hendrickson*, 365 Mass. at 85, 310 N.E.2d at 132, they contend that the discovery rule should be applied here as it was in *Hendrickson*.

This argument misses the mark because this case is in significant respects unlike *Hendrickson*. The Wilsons are buyers suing the seller of non-conforming goods. In *Hendrickson*, the alleged legal malpractice did not occur as part of a sales transaction. The defendant attorney had been hired to search the title of real estate the plaintiffs planned to purchase from someone else. The *Hendrickson* court also pointed to the fiduciary relationship between attorney and client and its attendant "duty of full and fair disclosure of facts material to the client's interests." 365 Mass. at 90, 310 N.E.2d 131. Unlike *Hendrickson*, this case between a buyer and seller in privity of contract presents a classic problem of quality in a purchased good and thus falls squarely within the U.C.C.

In conclusion, then, we reiterate our observation that, in response to the sorts of arguments appellants have offered in this case, the Massachusetts legislature may see fit to withdraw the purchase and sale of artwork from U.C.C. control, and to create a specific cause of action for breach of a warranty of authenticity that would be governed by a specially tailored statute of limitations.[11] At this time, however, the Wilsons' action falls under the statute of limitations applicable to sales contracts, section 2–725. Because that section's future performance exception is inapplicable here, the Wilsons' action is time-barred.

*For the foregoing reasons, the judgment of the district court is affirmed.*

10. Even if *Omni Flying Club* represents good law on this issue, it would not help the Wilsons because the SJC held there that the statute of limitations ran from the date of the allegedly negligent sale.

11. Other products also valued largely because of what they are purported to be—i.e., valued for their "authenticity"—include genuine gold and silver jewelry, antique furniture, and fine wines. As with works of art, buyers frequently rely on the expertise of the sellers who declare such items to be authentic.