**Hobart E. ROSEN, Norma Rosen, and Frances Lipman,**
**Plaintiffs–Appellants,**

v.

**Ira SPANIERMAN and Ira Spanierman Gallery, Defendants–Appellees.**

**No. 206, Docket 89–7471.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1989.
Decided Jan. 8, 1990.

Martin E. Karlinsky, New York City (Joshua L. Mallin, Maria Fury, Scheffler Karlinsky & Stein, New York City, of counsel), for plaintiffs-appellants.

Barry J. Boxer, New York City (Rose & Boxer, New York City, of counsel), for defendants-appellees.

Before MESKILL and WINTER, Circuit Judges, and LASKER,* District Judge.

MESKILL, Circuit Judge:

This appeal requires us to examine the New York statute of limitations for breach of warranty concerning a sale twenty years ago of a painting where the purchaser only recently learned that the painting was a fake. We must also address the common law fraud actions arising out of the same sale.

Plaintiffs Hobart and Norma Rosen (the Rosens) and Frances Lipman appeal from a judgment of the United States District Court for the Southern District of New York, Leisure, J., which granted the motion for summary judgment of defendants Ira Spanierman and the Ira Spanierman Gallery (collectively "Spanierman") and dismissed the complaint. In 1968, plaintiffs purchased a painting from Spanierman, which Spanierman represented to be the original work of the well known artist John Singer Sargent. Lipman and the Rosens assert that the painting is a fake, and seek in this action to recover damages.

The district court dismissed plaintiffs' fraud and breach of warranty claims on the basis that plaintiffs had failed to state claims of fraud and that the four year statute of limitations on breach of warranty claims contained in New York's Uniform Commercial Code had run. We agree that plaintiffs' breach of warranty claims are untimely and that Lipman failed to state a

---

* Honorable Morris E. Lasker, United States District Judge for the Southern District of New York, sitting by designation.

claim of fraud. The Rosens, however, have stated a claim of common law fraud. Accordingly, we affirm in part, vacate in part and remand for further proceedings.

## BACKGROUND

In the context of a motion for summary judgment, "factual allegations in the pleadings of the party opposing the motion ..., if supported by affidavits or other evidentiary material, should be regarded as true." *Burtnieks v. City of New York*, 716 F.2d 982, 983–84 (2d Cir.1983). The facts of this case are thoroughly set forth in the district court's opinion, reported at 711 F.Supp. 749 (S.D.N.Y.1989). We shall briefly discuss only those facts relevant to the present appeal, as they are alleged in the pleadings and other evidentiary materials.

In 1968, as an anniversary gift for her daughter and son-in-law, Norma and Hobart Rosen, Lipman purchased a portrait entitled "The Misses Wertheimer" from Ira Spanierman Gallery. Ira Spanierman is the sole owner of the gallery. Hobart Rosen negotiated with Spanierman for the purchase, and when they had reached an agreement on price the Rosens instructed Lipman to send Spanierman a check for $15,000. Lipman never saw the painting prior to the purchase and had no direct dealings with Spanierman.

Spanierman prepared an invoice that contains the following warranty: "This picture is fully guaranteed by the undersigned to be an original work by John Singer Sargent." The invoice also represented that the painting had been "[a]cquired from a member of the Wertheimer family," a fact that, if true, would enhance the value of the painting. Plaintiffs assert that Spanierman made similar oral representations to Hobart Rosen prior to the purchase. The invoice was addressed to Lipman "c/o" the Rosens, and the painting was shipped directly to the Rosen home.

Spanierman subsequently provided appraisals of the painting for insurance purposes at the Rosens' request. These appraisals were given in 1975, 1979, 1980, 1984 and 1986. Spanierman did not re-examine the painting before rendering any of these appraisals. The 1986 appraisal estimated the value of the painting to be $130,-000.

In 1984 the Rosens learned that a "catalogue raisonné" of John Singer Sargent's work was being prepared. Hoping that their painting would be included, the Rosens sent photographs of it and other information to Warren Adelson of the Coe Kerr Gallery in New York, which was involved in the preparation of the catalog. The Rosens did not communicate with Adelson again regarding their painting until after they had attempted to sell it as discussed below.

The Rosens subsequently decided to sell the painting and asked for appraisals from Sotheby's Parke Bernet and Christie's Appraisals (Christie's) in New York. The appraisals ranged from $175,000 to $250,000. Upon placing the painting with Christie's for auction in 1987, however, the Rosens were informed that it was a fake. They then met with Warren Adelson of the Coe Kerr Gallery, who agreed that the painting was not an authentic work of Sargent and stated that he had immediately suspected the painting was not genuine when the Rosens first contacted him in 1984.

The Rosens commenced this action against Spanierman in 1987 for common law fraud, negligent misrepresentation, breach of warranty and professional negligence. The original complaint named only Hobart and Norma Rosen as plaintiffs. In his answer, Spanierman raised as an affirmative defense the Rosens' lack of standing to bring the suit. The Rosens amended the complaint to add Frances Lipman as plaintiff.

Spanierman denied that the painting was a fake and moved for summary judgment, asserting, *inter alia*, the bar of the statute of limitations and plaintiffs' failure to state a claim of fraud. The district court granted Spanierman's summary judgment motion and dismissed the complaint in its entirety. Lipman and the Rosens appeal only the dismissal of the fraud and breach of warranty claims.

## DISCUSSION

### A. *Breach of Warranty*

Under section 2–725 of New York's Uniform Commercial Code the statute of limitations on an action for breach of contract is four years from the time the cause of action accrues. N.Y. U.C.C. § 2–725(1) (McKinney 1964). The plaintiffs purchased the painting from Spanierman in 1968, and therefore their action clearly was untimely unless the statute was extended for some reason. Lipman and the Rosens assert that their action falls within the exception to the four year limitations period contained in subdivision two of section 2–725, which states:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty *explicitly extends* to future performance of the goods and discovery of the breach *must await* the time of such performance the cause of action accrues when the breach is or should have been discovered.

*Id.* § 2–725(2) (emphasis added).

The district court assumed, and the parties agree, that a painting "performs" for purposes of the statute by being what it is purported to be, *i.e.*, an authentic work of the artist. *See* 711 F.Supp. at 753 (citing *Lawson v. London Arts Group*, 708 F.2d 226, 228 (6th Cir.1983)). The district court then concluded that the statute of limitations on plaintiffs' breach of warranty claims had run because Spanierman's warranty did not explicitly extend to future performance and because discovery of the alleged defect in the painting did not necessarily await future performance. *Id.* at 754–55.

We note that the Court of Appeals for the First Circuit reached these same conclusions on nearly identical facts. *See Wilson v. Hammer Holdings, Inc.*, 850 F.2d 3, 4–7 (1st Cir.1988) (construing Mass.Gen.L. ch. 106, § 2–725(2)); *see also Lawson*, 708 F.2d at 228 (discovery of nonauthenticity of painting did not *necessarily* await future performance). We agree with the First Circuit in its interpretation of section 2–725 as it applies to the authenticity of works of art.

### 1. Explicit Extension of Warranty

Lipman and the Rosens contend that Spanierman's warranty explicitly extended to future performance for three reasons: (1) authenticity is a permanent quality, and any warranty of authenticity therefore necessarily extends to the future; (2) under New York law, a warranty explicitly extends to future performance when the nature of the product implies performance over an extended period; and (3) Spanierman's subsequent appraisals indicate his intent to extend the warranty to the future and acted to revive the warranty.

The argument that a warranty of authenticity necessarily extends to future performance is unconvincing. Lipman and the Rosens are, in essence, asking us to create an exception to section 2–725's explicitness requirement when the warranty concerns an immutable quality. We decline this invitation to invade what is properly the domain of the state legislature. *See Wilson*, 850 F.2d at 6. As the district court recognized, subdivision 2 of section 2–725 is itself an exception to the general statute of limitations on breach of warranty claims. It would be inappropriate to expand this exception beyond its plain terms by dispensing with the condition that, to take advantage of the exception, the warranty *explicitly* extend to future performance. *See Stumler v. Ferry–Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir.1981) ("The mere expectation, however reasonable, that due to the type of product involved the statute of limitations on the warranty claims would not begin to run until discovery of the defect rather than upon delivery does not fit such a claim into the exception to the general rule.") (per curiam opinion adopting and quoting in full the opinion of the district court); *accord Frey Dairy v. A.O. Smith Harvestore Prods., Inc.*, 680 F.Supp. 253, 255 (E.D. Mich.1988), *aff'd*, 886 F.2d 128 (6th Cir. 1989); *Sellon v. General Motors Corp.*, 571 F.Supp. 1094, 1099 (D.Del.1983).

Plaintiffs maintain that a warranty of *authenticity* explicitly extending to future performance is difficult to imagine: it would make little sense, they assert, to warrant something as authentic "for its lifetime." But this does not present a reason for ignoring the plain language of section 2–725(2). The fact that a warranty of authenticity does not fit neatly within the statute as written does not justify judicial modification of the statute's requirements.

■ Plaintiffs' argument that New York law deems a warranty explicitly to extend to the future when the nature of the product implies performance over an extended period of time also is without merit. Plaintiffs rely on *Mittasch v. Seal Lock Burial Vault, Inc.*, 42 A.D.2d 573, 344 N.Y.S.2d 101 (2d Dep't 1973) (burial vault warranted to be satisfactory "at all times"), and *Parzek v. New England Log Homes, Inc.*, 92 A.D.2d 954, 460 N.Y.S.2d 698 (3d Dep't 1983) (logs guaranteed to be free from defects). The court in *Mittasch*, however, found the warranty's language to be explicit, and merely buttressed its conclusion with the fact that the nature of the product implied performance over an extended period. *See Mittasch*, 42 A.D.2d at 574, 344 N.Y.S.2d at 103. *Parzek* offers little analysis, and any statements are dicta because the court did not apply section 2–725 due to the defendant's failure to raise the statute of limitations as a defense. *See Parzek*, 92 A.D.2d at 955, 460 N.Y.S.2d at 699.

■ Plaintiffs' final argument fares no better. They cite no authority for their proposition that Spanierman's subsequent appraisals extended his warranty to future performance. The argument is unpersuasive because the appraisals themselves contain no warranties and the appraisals were completely separate transactions from the sale of the painting. The appraisals therefore could not, as plaintiffs maintain, revive Spanierman's original warranty.

Thus, the district court correctly held that the discovery rule of section 2–725(2) does not apply because the warranty did not explicitly extend to future performance.

### 2. Discovery "Must Await" Future Performance

The district court went on to hold that, even if the warranty had been explicit as to future performance, plaintiffs' discovery of the alleged lack of authenticity did not, as required by the statute, necessarily await future performance because plaintiffs could have discovered the defect immediately after the sale. 711 F.Supp. at 754. Plaintiffs contend that, to discover the alleged defect in the painting, they would have had to obtain the opinion of a second expert and that this would be an unreasonable burden to place on amateur collectors of art. They also assert that the district court was clearly erroneous, in the absence of expert testimony or affidavit, in finding that they could have discovered the alleged defect prior to their attempt to sell the painting. We reject both contentions.

■ Plaintiffs argue that requiring a purchaser of art to obtain a second expert opinion is unreasonable because most buyers do not call upon their paintings to "perform" until they try to sell them, and if a collector makes his purchase from a reputable dealer, he normally has no reason to suspect the authenticity of what he buys. But section 2–725(2) makes clear that it only applies where discovery of a defect *necessarily* awaits future performance. If the defect is discoverable as soon as the good is purchased, section 2–725(2) simply does not apply. *See Wilson*, 850 F.2d at 7 (purchasers of painting easily could have discovered problem). While we would hesitate to deem the alleged defect here readily discoverable if extraordinary measures were required to detect the flaw, a painting's lack of authenticity is readily apparent to the trained eye of an art expert. A purchaser who spends a considerable sum of money for a painting undoubtedly will, as the Rosens did here, obtain appraisals for insurance purposes. Requiring a purchaser to obtain that appraisal from an expert other than the seller is not an onerous burden. *See Dawson v. G. Malina, Inc.*, 463 F.Supp. 461, 463 (S.D.N.Y.1978) (plaintiff in breach of warranty action

alerted to possible lack of authenticity during same year as purchase when he showed photograph of vase to an expert).

 The plaintiffs' second argument, that expert testimony was required before the district court could find that the defect was discoverable at the time of purchase, has no merit for two reasons. First, as a procedural matter, once Spanierman moved for summary judgment, the burden shifted to plaintiffs to demonstrate material facts in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Plaintiffs never asserted below that they could not have discovered the defect prior to the time they tried to sell the painting. Counsel for plaintiffs stated at oral argument that the district court went beyond Spanierman's summary judgment motion in reaching its conclusions and that counsel did not have an adequate opportunity to respond to many of the points raised by the district court. Spanierman's motion, however, clearly asserted that the statute of limitations had run, and we believe that it was incumbent on plaintiffs to raise the issue of inability to discover the alleged lack of authenticity if they wished to bring themselves within the exception of section 2–725(2). *See* Fed.R.Civ.P. 56(c). Second, even if they had raised the issue, plaintiffs' argument is severely undermined by the first independent expert to whom they showed the painting, who immediately suspected it was a fake. In any event, this point is not central to our decision because Spanierman's warranty did not meet the first requirement of section 2–725(2): it did not explicitly extend to future performance.

In sum, the discovery exception to the statute of limitations contained in section 2–725(2) does not apply, and plaintiffs' breach of warranty claims accrued at the time tender of delivery was made in 1968. The cause of action therefore is untimely. A contrary holding would provide purchasers of art with greater protection than purchasers of other types of goods, and would leave art dealers exposed to breach of warranty claims indefinitely, a result that we

do not believe was intended by the New York legislature. *See Wilson,* 850 F.2d at 7. Lipman and the Rosens direct our attention to section 13.01 of New York's Arts and Cultural Affairs Law, which provides, *inter alia,* that whenever an art merchant delivers a certificate of authenticity to a buyer who is not an art merchant, the certificate is deemed to create an express warranty of authenticity. *See* N.Y. Arts & Cult.Aff.L. § 13.01(1)(b) (McKinney Supp. 1989). Plaintiffs assert that this section indicates New York's intent "to provide a full measure of protection to casual buyers of art." While we have no trouble accepting this proposition, section 13.01 contains no indication that claims for breach of warranty are not subject to a statute of limitations.

### B. Fraud Claim

#### 1. Lipman

 The district court held that Lipman did not show the necessary element of reliance on Spanierman's alleged misrepresentations in her common law fraud claim because Spanierman made no representations directly to her. 711 F.Supp. at 755. Lipman argues that Spanierman knew Hobart Rosen would repeat Spanierman's representations to her, and that a defendant may be liable for fraud to a third party such as her when the defendant knows his representations will be conveyed to the third party.

Lipman's argument is appealing, but unfortunately unpersuasive. "A third party can recover damages for a fraudulent misrepresentation if he can establish that he relied upon it to his detriment, and that the defendants intended the misrepresentation to be conveyed to him." *Peerless Mills, Inc. v. American Tel. & Tel. Co.,* 527 F.2d 445, 450 (2d Cir.1975) (applying New York law); 60 N.Y.Jur.2d *Fraud and Deceit* § 172, at 697 (1987) (representations must be made for purpose of influencing party and with intent that they be acted on by that party). However, we fail to see how Lipman relied *to her detriment* on any representation. Unlike the plaintiff in *Peerless,* who made a loan, Lipman made a

gift with no expectation of repayment. Thus, from a legal standpoint, Lipman is in no worse position than if the painting had been authentic. She parted with $15,000 in exchange for the gratitude that accompanied a gift. She is no worse off if the painting is not an original.[1] In addition, there is no evidence that Spanierman intended or expected his representations to be repeated to Lipman. Hobart Rosen's affidavit in opposition to the motion for summary judgment does not state that he repeated Spanierman's representations to Mrs. Lipman or that Lipman would not have purchased the painting if the representations had not been made. His affidavit asserts only that Spanierman knew Lipman was purchasing the painting for the Rosens. This asserted knowledge is not sufficient to establish either Spanierman's intent that Lipman rely or actual reliance by Lipman. *See Peerless*, 527 F.2d at 451. Lipman failed to state a claim of fraud.

### 2. The Rosens

■ The district court held that the Rosens failed to state a fraud claim because they were not the purchasers of the painting, and thus could not rely on any misrepresentations. 711 F.Supp. at 755. The Rosens argue that they did rely by deciding on this specific painting as their gift, and that they are in a worse position because, if the misrepresentation had not occurred, they now would own a painting worth over $200,000. We agree that the Rosens have made a sufficient showing on this summary judgment motion of reliance on the alleged misrepresentations, and we vacate that part of the judgment that dismissed the Rosens' fraud claim.

It is well settled that, to maintain a fraud claim under New York law, a plaintiff must establish that he relied on the defendant's misrepresentations and that this reliance caused him injury. *See, e.g., Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119, 250 N.E.2d 214, 217, 302 N.Y.S.2d 799, 803 (1969); *Pappas v. Harrow Stores, Inc.*, 140 A.D.2d 501, 504, 528

N.Y.S.2d 404, 407 (2d Dep't 1988). Plaintiffs' pleadings and other evidentiary materials clearly assert that the Rosens relied on Spanierman's alleged misrepresentations in selecting the painting as their gift and in directing Mrs. Lipman to disburse to Spanierman the funds for the purchase. The remaining question is whether this reliance caused the Rosens injury.

To demonstrate injury from Spanierman's alleged fraud, the Rosens must show actual pecuniary loss. *See Dress Shirt Sales, Inc. v. Hotel Martinique Assocs.*, 12 N.Y.2d 339, 343, 190 N.E.2d 10, 12, 239 N.Y.S.2d 660, 663 (1963); *Raymond Corp. v. Coopers & Lybrand*, 105 A.D.2d 926, 927, 482 N.Y.S.2d 377, 379 (3d Dep't 1984). The Rosens can satisfy this requirement by proving that they were induced "to part with or refrain from obtaining something of value." *Pappas*, 140 A.D.2d at 504, 528 N.Y.S.2d at 407. We believe that, although they technically were not the purchasers of the painting, the Rosens have sufficiently alleged injury. *See* 60 N.Y.Jur.2d, *supra*, at 698 ("right to recover for fraud or deceit is not restricted to the parties to a transaction").

Hobart Rosen's affidavit in opposition to the motion for summary judgment states that he decided to purchase the painting in reliance on Spanierman's misrepresentations and negotiated with Spanierman for a reduction in the price. His mother-in-law offered to provide the funds for the purchase as a wedding anniversary gift for her daughter and son-in-law, and the painting was delivered directly to the Rosens. On these facts—*i.e.*, a pre-existing agreement to purchase a gift, careful research and negotiation on the part of the donee, and delivery of the gift directly to the donee rather than the donor—the funds for the purchase are properly regarded as an asset of the Rosens. Stated another way, Lipman presented the Rosens with the opportunity to acquire an asset believed to be worth at least $15,000. This opportunity was a spendable asset. The Rosens could

---

**1.** We assume for purposes of discussion that the painting is not an authentic work of John Singer Sargent. As noted earlier in the opinion,

Spanierman maintains that the painting is genuine. The district court did not reach this issue, and it is not presented on appeal.

have chosen to acquire a painting in another gallery, or something entirely different. In reliance on Spanierman's representations, however, the Rosens chose to spend this opportunity on this particular painting. *See* 60 N.Y.Jur.2d, *supra,* § 167, at 689 ("Fraudulent misrepresentations which transmute indecision into a damaging decision connote damages."); *cf. Romano v. Key Bank of Central New York,* 90 A.D.2d 679, 680, 455 N.Y.S.2d 879, 881 (4th Dep't 1982) (allegation that defendant's misrepresentations denied plaintiff position as secured, rather than unsecured creditor, alleged sufficient injury); *Inman v. Merchants Mut. Casualty Co.,* 274 A.D. 320, 323, 83 N.Y.S.2d 801, 803–04 (3d Dep't 1948) (plaintiff induced to relinquish right of tort action stated sufficient injury as long as she proved claim would have been successful). If the representations here were true, the Rosens would now own a painting worth approximately $200,000. On these facts, to hold that the Rosens have not suffered injury would defy logic.

We understand the district court's reluctance to find detrimental reliance by the Rosens when the invoice lists Mrs. Lipman as the purchaser. But to hold that Lipman may not recover because no representations were made to her and that the Rosens may not maintain their claim because they technically were not parties to the sale would unrealistically isolate the different parts of this transaction. The facts as alleged establish that this sale would not have taken place but for the representations. If, as plaintiffs claim, Spanierman willfully deceived them as to the authenticity of the painting, and the judgment stands, he would gain a windfall due to the mere fortuity that Lipman was the source of the funds for the purchase.

The weakness of a mechanistic approach to this case becomes even more apparent when one imagines the different forms that this transaction might have taken. Lipman might have given the funds for the purchase directly to the Rosens, and the Rosens then could have written their own check to Spanierman. Or the Rosens might have gone ahead with their plan to purchase the painting and parted with their own money, and Lipman then could have reimbursed them. In either of these scenarios Spanierman would have no basis for asserting that the Rosens did not rely to their detriment on his purported misrepresentations. To deny the Rosens recovery simply because they chose to instruct Mrs. Lipman to write a check directly to Spanierman would be to treat this common law fraud claim as if it were controlled by the law of commercial paper.

█ Spanierman contends that plaintiffs' fraud claims are asserted only in an attempt to extend the statute of limitations on their breach of warranty claims, and that these claims should therefore be dismissed. This contention is without merit. It is well established that New York courts will not entertain fraud claims that are merely incidental to claims for breach of contract. *See Cabrini Medical Center v. Desina,* 64 N.Y.2d 1059, 1061–62, 479 N.E.2d 217, 219, 489 N.Y.S.2d 872, 874 (1985). But the Rosens are not asserting, as Spanierman maintains, merely that Spanierman intentionally breached his warranty, a claim that clearly would be barred by the statute of limitations on warranty claims. *See Calamel v. Ridge View Realty Corp.,* 115 A.D.2d 279, 279, 496 N.Y.S.2d 154, 155 (4th Dep't 1985), *appeal dismissed,* 67 N.Y.2d 799, 492 N.E.2d 397, 501 N.Y.S.2d 324 (1986). We construe the Rosens' claim to be that they were fraudulently induced to purchase the painting. A claim for fraudulent inducement is separate and distinct from a claim for breach of contract under New York law, and a plaintiff may plead both causes of action. *See, e.g., Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 746–47 (2d Cir.1979); *Globekirk, Ltd. v. E.D. & F Man "Coffee" Ltd.,* 123 Misc.2d 902, 904, 474 N.Y.S.2d 388, 390 (Sup.Ct.1984); *see also In re Ply*Gem of Laurel, Inc.,* 91 A.D.2d 513, 513, 456 N.Y.S.2d 382, 383 (1st Dep't 1982) (discovery rule of fraud statute of limitations applies to claim of fraud in the inducement); *Stell Mfg. Corp. v. Century Indus., Inc.,* 15 A.D.2d 87, 89–90, 221 N.Y.S.2d 528, 530–31 (1st Dep't 1961)

(plaintiff allowed to replead cause of action for fraud extraneous to contract).[2]

The Rosens stated a claim of common law fraud, and it is not barred as incidental to the claim for breach of warranty.

## CONCLUSION

Plaintiffs' breach of warranty claims are barred by the statute of limitations. Plaintiff Lipman failed to state a claim of fraud because she did not establish the necessary element of reliance on Spanierman's alleged misrepresentations, but the Rosen plaintiffs have stated a claim of common law fraud. Therefore, the judgment of the district court is vacated to the extent that it dismissed the Rosens' fraud claim, and the case is remanded for further proceedings on this claim.

The parties shall bear their own costs.

**2.** Spanierman asserted in his memorandum of law in support of the motion for summary judgment that the statute of limitations on plaintiffs' fraud claims had expired, but the district court did not reach the issue. Spanierman has not pressed this point on appeal, and thus we need not decide the issue. Even if we were presented with this defense on appeal, however, our disposition of the case would not change. The statute of limitations on fraud claims in New York is the longer of (1) six years from the date of the fraud, or (2) two years from the date the fraud was discovered or could have been discovered with the exercise of reasonable diligence. *See* N.Y. C.P.L.R. 213(8), 203(f) (McKinney Supp. 1989); *Smith v. Sarkisian,* 63 A.D.2d 780, 781, 404 N.Y.S.2d 911, 912–13 (3d Dep't 1978), *aff'd,* 47 N.Y.2d 878, 392 N.E.2d 1257, 419 N.Y.S.2d 74 (1979). The Rosens' actual discovery of the fraud allegedly took place in 1987, and the action was timely commenced within two years of that date. The Rosens could have discovered Spanierman's asserted fraud immediately after their purchase by presenting the painting to an independent expert, and this ability to discover bars their breach of warranty claim. But New York courts have exhibited a reluctance to impute discovery to a plaintiff maintaining a claim of fraud who has no reason to suspect that he has been defrauded. *See, e.g., Trepuk v. Frank,* 44 N.Y.2d 723, 724–25, 376 N.E.2d 924, 926, 405 N.Y.S.2d 452, 453 (1978); *Azoy v. Fowler,* 57 A.D.2d 541, 541–42, 393 N.Y.S.2d 173, 174–75 (2d Dep't 1977). On the facts as alleged, the Rosens had no reason to suspect the authenticity of their painting until they tried to sell it in 1987. Thus, their fraud claim appears to be timely brought.