Fabricant, J.
INTRODUCTION
The plaintiff, Raytheon Company, brought this three-count action against the defendant, Helix Technology Corporation, seeking damages it claims were caused by defective components supplied by CTI-Cryogenics (“CTI”), a Division of Helix Technology Corporation. Count I of the complaint alleges breach of warranty. This matter is before the court on defendant Helix’s motion to dismiss count I as barred by the applicable statute of limitations. For the reasons set forth below, the defendant’s motion to dismiss, as to count I, is ALLOWED.
BACKGROUND
The complaint alleges the following facts. The plaintiff is the prime contractor for the Maverick missile program. Maverick missiles are the most widely used precision guided munition in the free world, designed *511 for close air support, interdiction and defense suppression missions by the Air Force, Navy and Marine Corps as well as by twenty-four United States allies. The defendant supplied cryoengines for installation in the missile’s imaging infrared guidance system. When the guidance system functions properly, the missiles give United States aircrews “launch and leave” capability at a wide range of distances and speeds, enhancing their safety by enabling them to perform evasive maneuvers after launching a missile.
In 1992, Helix and Raytheon entered into a contract pursuant to which Helix was to manufacture and deliver to Raytheon 5,370 cryoengines. These cryoengines were to be installed in the Fiscal Year 1991 guidance control system of the AGM-65 (“Maverick”) missiles produced by Raytheon for the United States Department of Defense. The contract consists of Purchase Order 77-8781-13-3029, Purchase Order Attachments and a document entitled Critical Item Product Fabrication Specification for Cryoengine for Common IR Guidance Subassembly.[1] Pertinent provisions of these documents are the following:
Item 9: This Section shall be deleted and replaced in its entirety with the following:
WARRANTY: CTI-CRYOGENICS warrant that all goods manufactured by CTI-CRYOGENICS shall be free from defects in material, design, workmanship and title: provided, however, that this warranty shall be limited to goods found to be defective within a period of twelve (12) months from the date of delivery from CTI-CRYOGENICS. Warranty is void if the equipment is altered or modified by Ray-theon/User after delivery.
EXCEPT FOR THE EXPRESSED WARRANTY IN THE PREVIOUS PARAGRAPH, CTI-CRYOGENICS DISCLAIMS ALL WARRANTIES WITH RESPECT TO THE GOODS, INCLUDING ANY AND ALL IMPLIED WARRANTIES FOR MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE.
Purchase Order 77-8781-13-3029 Attachment 5 (capitalized as in original).
ANY VARIANCES FROM THE PART PRINT(S) AND/OR SPECIFICATIONS MUST BE AUTHORIZED BY AN APPROVED DEVIATION/WAIVER FROM RAYTHEON PRIOR TO SHIPMENT OF THE PART / MATERIAL TO RAYTHEON.
51. ORDER OF PRECEDENCE: THE REQUIREMENTS SPECIFIED HEREIN IN NO WAY RELIEVES (sic) THE SUPPLIER OF COMPLYING WITH THE DRAWING/SPECIFICATION REQUIREMENTS. IN THE EVENT OF A CONFLICT, THE PURCHASE ORDER REQUIREMENTS SHALL GOVERN.
Purchase Order 77-8781-13-3029 (capitalized as in original).
3.2.1.8 Operating Life. The unit shall be capable of meeting the performance requirements specified herein for a minimum of 200 hours of accumulated operation over the operating temperature range of 3.2.2. Continuous periods of running shall not exceed 1.0 hour with at least one-half hour off-time between consecutive one-hour operating periods.
Specification document CI32175-107.
The cryoengines are intended to cool the detector portion of Maverick’s guidance system. If the cryoengines fail to function properly, the guidance system is rendered ineffective. Over time it became apparent to Raytheon that the guidance systems of the Fiscal Year 1991 Mavericks did not perform as well as those deployed earlier. Prior to 1997, defective cryoengines caused three percent of guidance unit failures. In 1997, testing of Maverick missiles revealed a cryoengine failure rate of forty-four percent. The plaintiff informed the defendant and thereafter undertook its own investigation to determine the cause of these cryoengine failures. The plaintiffs failure analysis revealed that helium leaked from two seals in the cryoengines and that these seal failures resulted from impurities, particularly cotton fibers and metal slivers that were introduced into the cryoengines during the manufacturing process. The defects in the cryoengines were inherently unknowable to the plaintiff until the units failed and plaintiffs investigation was completed. The plaintiff has incurred considerable expense investigating and remedying these failures.
Raytheon brought this action against Helix on August 14, 1998. The complaint does not provide a date of delivery of the cryoengines. It does, however, acknowledge, at paragraph 15, that the contract warranty “was generally limited” to defects found within twelve months from the date of delivery. Paragraph 15 goes on to assert that the specification document “explicitly extended CTI’s warranty to the future performance of the cryoengines.” Paragraph 15 thus implicitly acknowledges that delivery occurred more than twelve months prior to discovery of the alleged defect, and more than four years prior to suit. The defendant’s affidavit supplies March 11, 1994, as the last delivery date, and the plaintiff does not contradict this assertion. In light of the allegations of paragraph 15 of the complaint, the Court treats this fact as undisputed for purposes of this motion.
DISCUSSION
For purposes of a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the allegations of fact in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. at 584, quoting Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
*512 While the Court must assume the truth of all well-pleaded factual allegations, characterizations and conclusions of law warrant no such consideration. See e.g. Boston & M.R.R. v. County Com'rs of Middlesex County, 239 Mass. 127, 131 (1921). “The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon such interpretation.” USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App.Ct. 108, 116 (1989). The determination of whether a contract contains ambiguity is also a question of law for the court. Fashion House, Inc. v. K-Mart Corp., 892 F.2d 1076, 1083 (1st Cir. 1989). Thus, those portions of the complaint that assert interpretations of the contract provisions are legal, rather factual, and do not bind the Court in considering the motion to dismiss.
This action, involving the sale of goods, is governed by Article 2 of the Uniform Commercial Code, G.L.c. 106, §2-725, which reads, in pertinent part:
(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party’s lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
The parties agree that, under this provision, the applicable limitations period is four years. They disagree, however, as to when the four years began to run in this case. The defendant argues that the four years began to run on March 11, 1994, when the last delivery was made. Since that date is more than four years before the plaintiff filed its complaint, defendant contends that the plaintiffs action is time-barred. The plaintiff invokes the exception stated in §2-725(2), based on paragraph 3.2.1.8 of the specification document, which the plaintiff characterizes as an explicit extension of the warranty to future performance. On this basis, the plaintiff argues that the four year limitations period began to run at the time the breach was or should have been discovered, which it identifies as the completion of its investigation in 1997.
For the exception in §2-725(2) to apply, two conditions must be met. First, a warranty must explicitly extend to future performance of the goods, Second, the circumstances must be such that “discovery of the breach must await” the time of the promised future performance. In determining whether a warranty explicitly extends to future performance, courts have emphasized the word “explicitly,” construing this requirement to mean that a warranty must specify a particular future time. E.g. Standard Alliance Ind. v. Black Clawson Co., 587 F.2d 813, 820 (6th Cir. 1978), cert. den. 441 U.S. 923. See also Fire Dist. No. 9 v. American LaFrance, 424 A.2d 441 (N.J.Super.App.Div. 1980) (key requirement in finding a warranty of future performance is specific reference to future time). “[A]n express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period. Thus, where a seller warrants that a [product] will meet certain performance warranties, but makes no mention of how long the warranties are meant to last, the statute of limitations begins to run at delivery. Where, however, an express warranty is made which extends for a specific period of time . .. [the seller] is explicitly warranting the future performance of the product or goods for that period of time.” Standard Alliance Ind., 587 F.2d at 820-21; Cf. Mittasch v. Seal Lock Burial Vault, 344 N.Y.S.2d 101 (1973) (exception to requirement of specific future time where nature of product, burial vault, indicates warranty of performance “for all time").
Section §2-725(2) also requires that discovery of the breach “must await” the time of such future performance. Courts have interpreted this requirement to mean that discovery of the breach must “necessarily await” such future performance. Wilson v. Hammer Holdings, Inc., 850 F.2d 3, 6 (1st Cir. 1988) (emphasis in original). Where a warranty specifies a particular time in the future, performance or lack of performance as of that time cannot be determined until that time arrives. See id. at 7. If discovery of the breach is possible before the time specified for future performance, the requirement that discovery “must await” future performance is not met, and the exception does not apply.
The Wilson case, 850 F.2d at 3-7, is illustrative. In Wilson, the plaintiff purchasers of a painting, despite having received a guarantee of the painting’s authenticity, later discovered the painting was not authentic. Id. at 34. The Court assumed that the warranty extended to authenticity in the future, but nevertheless held that the “must await” requirement was not met, because it was possible for the plaintiffs to have discovered the breach as soon as the goods were sold, by procuring an expert’s opinion. Id. at 7. The Court reached this conclusion despite recognizing the unlikelihood that persons in the plaintiffs’ position would obtain such an opinion soon after having purchased the painting from a reputable and professional dealer; the determinative fact, for purposes of the “must await” requirement, was that discovery was possible prior to any specific future time. Id. at 6.
Also instructive is Perry v. Augustine, 37 Pa. D. & C.2d 416, 418 (1965), which involved a warranty that a heating system “would be able to heat at 75 degrees inside, at a -20 degrees outside temperature.” Since discovery of a breach of such a warranty would necessarily have to await the seasonal occurrence of the *513 specified outside temperature, the Court held the “must await” requirement met. Id. at 418. If the warranty had guaranteed only that the system would heat effectively or would operate for a specified amount of time, discovery of such a breach would not necessarily have to await winter weather, since the system could have been tested for compliance with such specifications during any season.
Here, the contract documents specify only that the cryoengines will perform for “200 hours of accumulated operation,” subject to specified limitations regarding continuous operation. The documents identify no specific date or time in the future. Nor does the product by its nature supply a future date when performance would reasonably be expected, unlike the burial vault in Mittasch, 344 N.Y.S.2d at 101-03. To the contrary, the beginning and end of the 200-hour period are both entirely within the control of the purchaser. Both could occur within days of delivery, or could wait until years after delivery. Raytheon had the capacity to discover any breach of warranty as early as it chose to test or operate the cryoengines, or to postpone discovery for as long as it chose to defer such testing or operation. If this language were sufficient to invoke the statutory exception, unoperated cryoengines could remain under warranty years after delivery. See Wilson, 850 F.2d at 7. Such a result would thwart the statutory purpose to establish a reasonable period of time beyond which business persons need not worry about stale warranty claims. See Standard Alliance Ind., 587 F.2d at 820; Cf. Nation Enterprises, Inc., v. Enersyst, Inc. 749 F.Supp. 1506, 1510 (N.D. Ill. 1990) (contract warranting product against defects “for one year from the date of delivery or 2100 accumulated hours of use, whichever expired sooner” held explicit extension to future performance).
This conclusion does not depend on whether the 200 hour language in the specification document is an “express warranty” within the meaning of G.L.c. 106, §2-313(2).[2] See generally, USM Corp. v. Arthur D. Little Systems, Inc., 28 Mass.App. at 120 (breach of technical specifications “always regarded by the parties as being of significance” constituted breach of warranty); Consolidated Data Tenninals v. Applied Digital Data Systems, 708 F.2d 385, 391 (9th Cir. 1983) (specific warranty language prevails over general disclaimer of warranty). Assuming, for purposes of this motion, that it is, the question remains whether it extends to future performance, and whether discovery must await such future performance, as required by §2-725(2). For the reasons discussed, the Court concludes that the specification in issue here does not meet the requirements of that provision. Accordingly, the motion to dismiss, as to count I, must be allowed.
CONCLUSION
For the reasons stated, the Defendant’s Motion Dismiss Count I of the Complaint is ALLOWED.

 Although the plaintiff did not append copies of the contract documents to the complaint, the defendant has supplied copies of them as exhibits to its affidavit in support of its motion to dismiss. As the plaintiff acknowledges, such documents may properly be considered on a motion to dismiss, without converting the motion to one for Summary Judgment. E.g. Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1219-20 (1st Cir. 1996); see also Myers v. Boston Magazine Co., 380 Mass. 336, 339 (1980).

 That statute provides in pertinent part:
(1) Express warranties by the seller created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description or model.
(c) Any or model sample . . .
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as “warrant” or “guarantee” or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller’s opinion or commendation of the goods does not create a warranty.