Scott **SCHUBOT**, et al., Plaintiffs,

v.

**McDONALDS CORPORATION**, Defendants.

No. 89–8207–CIV.

United States District Court, S.D. Florida.

Dec. 26, 1990.

Richard Levenstein, and James E. Wilbur, Bond Schoeneck & King, Boca Raton, Fla., for plaintiffs.

G. Joseph Curley, Gunster, Yoakley, Criser & Stewart, P.A., West Palm Beach, Fla., Alan Silberman, Sonnenschiem, Car-

lin, Nath & Rosenthal, Chicago, Ill., Margo Chapello, and Ira Feldman, McDonalds Corp., OakBrook, Ill., for defendants.

## ORDER

GONZALEZ, District Judge.

On April 24, 1989, the plaintiffs filed their complaint in the Circuit Court for the Fifteenth Judicial Circuit of Florida. On May 5, 1989, the defendants filed their Notice of Removal to the United States District Court for the Southern District of Florida.

### The Complaint

Plaintiffs complaint is in five counts. Count One alleges Fraud in the Inducement; Count Two alleges fraud generally; Count Three states that the defendants have violated Florida's Fraudulent Practices Act, Fla.Stat. § 817.02 et seq., and Florida's Business Opportunity Act, Fla.Stat. § 559.80 et seq.; Count Four alleges breach of contract.

In Count Five, the plaintiffs seek injunctive relief. Count Six alleges that the defendants intentionally interfered with the plaintiffs' business relationships.

This cause is now before the Court upon the defendants' motion for summary judgment with respect to all counts of the plaintiffs' complaint. The plaintiffs have responded in a timely fashion, and have filed their cross-motion for summary judgment.

## I. THE FACTS

The material facts are not in dispute.

Plaintiff Scott Schubot is the principal of plaintiff corporations Schubot, Inc.—Northlake, and Schubot, Inc.—Jupiter. The defendants in this action are the McDonalds Corporation, and McOpCo Service Company (collectively "McDonalds").

Until July 1, 1985, Richard Schubot, father of plaintiff Scott Schubot, owned twenty McDonalds' restaurants. Richard Schubot also owned the exclusive right to develop new restaurants, the right of first refusal concerning new restaurants, and the exclusive right to expand any of McDonalds' new restaurants in Palm Beach County, Florida. Complaint ¶¶ 11–12; Plaintiff's Common Fact Statement Re: Response to Motions for Summary Judgment ("Plaintiff's facts"), pp. 1–2.

Scott Schubot was an approved operator in one of his father's McDonalds' franchises and held minority shares in others. Scott worked in the franchises since 1980, was familiar with the operations of the restaurants, and also knew that McDonalds planned to develop additional restaurants in Palm Beach County. Memorandum in Support of Defendant's Motion for Summary Judgment on Count III of Plaintiff's Complaint ("Defendant's Count III Memo"), p. 3.

In 1985, Richard Schubot undertook steps to transfer eighteen McDonalds restaurants to the defendants. Richard originally planned to transfer all twenty restaurants plus his exclusive rights. Defendant's Count III Memo, p. 2. After negotiations with the defendants, however, Richard Schubot decided to transfer two of his McDonalds restaurants to his son Scott. The remaining eighteen stores, and all of Richard's exclusive rights, were sold to the defendants. Plaintiff's facts, pp. 2, 13–14.

The plaintiffs allege that Richard Schubot entered into these transactions due to certain representations made by the defendants. These representations include statements by a McDonalds' Corporations Vice President that Scott Schubot would be considered for any future expansion in Palm Beach County. Complaint, ¶ 16; Plaintiff's facts, pp. 3–4. Richard Schubot, in his deposition, has stated that:

> The entire deal would have collapsed had I not gotten what I wanted for Scott ... (so Scott would get) the right to get more stores in accordance with McDonald's thinking based on normal operations....

Plaintiffs' Memorandum in Opposition to the Defendants' Motion for Summary Judgment With Respect to Count I ("Plaintiffs' Count I Memo") p. 13; Appendix to Plaintiffs' Response to Motions for Summary Judgment ("Plaintiffs' Appendix"), Exhibit 1 at 88. Richard Schubot further testified that the defendants told him that "Scott

would be capable or approved to open or to get additional stores," *See*, Plaintiff's facts, p. 25; Plaintiffs' Appendix, Exhibit 1 at 97, and that "Scott would be treated like all other franchisees...." Plaintiffs' Appendix, Exhibit 7 at 74; *See, also* Complaint, ¶¶ 16, 24.

The plaintiffs claim that these representations of material facts were made by the defendants in order to induce the plaintiffs to enter into the contracts, that the representations were false, and that the plaintiffs relied on these statements to their detriment. Complaint, ¶¶ 17–22.

On July 1, 1985 the transaction closed. Richard Schubot sold eighteen of his twenty stores, along with all of his exclusive rights, to McDonald's Corporation. *See* Appendix to Defendants' Motions for Summary Judgment ("Defendants' Appendix"), Exhibit 3, ¶¶ 1.2–1.3. Richard then assigned the license and lease agreements for the two remaining stores to his son Scott. *See*, Complaint, Exhibit A; Defendants' Appendix, Exhibit 6, ¶ 1.2. No territorial rights were transferred to Scott. Complaint, Exhibit B at 17; Plaintiffs' Appendix, Exhibit 5 at 17.[1]

McDonalds and Scott Schubot then terminated the assigned license and lease agreements for two restaurants, and executed new license and lease agreements. Defendants' Appendix, Exhibits 1 and 2. The new franchise agreements extinguished the franchise agreements assigned to him by his father. Each new agreement contained the following pertinent clause:

> (Scott Schubot) hereby releases and forever discharges McDonalds' Corporation, and all of its subsidiaries and affiliates ... from all claims, losses, liabilities and causes of action ...

Defendants' Appendix, Exhibit 1, ¶ V; Defendants' Appendix, Exhibit 2, ¶ V.

Each License and Lease between Scott Schubot and McDonald's Corporation contained the following explicit disclaimers of any additional oral or written agreement between the parties:

> This License ... constitutes the entire agreement between the parties and supersedes any and all prior and contemporaneous, oral or written, agreements or understandings of the parties.

Defendants' Appendix, Exhibit 7, ¶ 26.

> This Lease, the License Agreement and the Franchise Agreement shall be deemed to include the entire agreement between the parties hereto and it is agreed that neither Lessor nor any one acting on its behalf has made any statement, promise or agreement or has taken upon itself any engagement whatever, verbally, or in writing in conflict with the provisions hereof, or extends the terms of this lease, or that in any way modifies, varies, alters, enlarges or invalidates any of the provisions hereof....

Defendants' Appendix, Exhibit 7, ¶ 8.07.

Scott Schubot then commenced operating his two McDonald restaurants. Those restaurants initially received satisfactory ratings, yet eventually received poor ratings. Complaint 28. Over time, Scott's working relationship with McDonalds also deteriorated considerably. Complaint, Exhibit D at 22.

In the fall of 1986, McDonalds' decided to open a new restaurant in Palm Beach County. Plaintiff Scott Schubot met with the defendants' regional manager to be selected to operate the new unit. Almost one year later, the defendants decided that the new franchise would be company operated; Defendants' Appendix at 128; that McDonalds wanted to operate its own store. Appendix to Defendants' Motion for Summary Judgment on Counts I and II at 23; Complaint ¶ 29.

Schubot appealed this decision to the appropriate personnel in McDonalds. McDonalds regional manager's decision was reviewed via McDonalds' ombudsman procedure, and its internal non-binding review process. Complaint ¶ 32. The ombudsman made a recommendation upholding the region's licensing decision awarding the new

---

1. Normally, McDonalds' franchises do not contain exclusive territorial rights. Scott Schubot was furnished with McDonalds' Uniform Franchise Offering Circular, outlining the fact that a franchise does not have those rights. *See*, Complaint, Exhibit B.

Palm Beach County site to McDonalds. *See,* Complaint Exhibit D.[2]

The ombudsman's decision was appealed to the President of McDonalds' U.S.A. division, who found that the franchising decision was correct, and eventually affirmed that decision. *See,* Complaint ¶¶ 42–44, and Exhibit B.

## II. DISCUSSION

Summary judgment may be granted when there are "... no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Tippens v. Celotex Corp.,* 805 F.2d 949, 952–954 (11th Cir. 1986); *See also,* C. Wright, A. Miller and M. Kane, Federal Practice and Procedure, § 2725 at 75 (1983). The evidence must be viewed in the light most favorable to the non-moving party. *Tippens,* 805 F.2d at 892, *Sweat v. Miller,* 708 F.2d 655, 656–657 (11th Cir.1983).

"In order to avoid the grant of summary judgment, a party must demonstrate both the existence of a material fact and a genuine issue as to that material fact. A fact is material if it constitutes a legal defense to an action." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). In other words, a fact is material if it is an essential element of the cause of action. *Murphy v. Light,* 257 F.2d 323, 325 (5th Cir.1958). In the instant matter, this burden appears to be satisfied.

### A. *Count One—Fraud in the Inducement*

■ In order to prevail on a claim of fraud in the inducement, a plaintiff must prove:

(1) That the defendants misrepresented a material fact;

(2) That the defendants knew or should have known that the statement was false;

(3) That the defendants intended that the representation would induce the plaintiff to enter into reply; and

(4) That the plaintiff was injured by acting in justifiable reliance on the misrepresentation.

*Golden v. Mobil Oil Corp.,* 882 F.2d 490, 494 (11th Cir.1989)[3]; *Johnson v. Davis,* 480 So.2d 625, 627 (Fla.1985).

The plaintiffs base their action on their allegation that the defendants assured Richard Schubot that his son Scott would be treated like any other operator in Palm Beach County.

■ The plaintiffs, however, fail to circumvent two facts: (1) that Scott Schubot released the defendants from any rights to future expansion he may have acquired from his father; and (2) that the new franchise contract which he executed did not provide for new expansion rights. The new franchise agreement between Scott and the defendants did not mention any special privileges that Scott would enjoy as

2. The Ombudsman inquiry concluded that Scott Schubot should have been considered for the new site, yet was not. The report also concluded that a commitment was indeed made to treat Scott Schubot as "any other owner/operator." Complaint, Exhibit D at 22.

The report further concluded, however, that Scott Schubot was treated as "any other owner/operator." *Id.*

The Ombudsman points to the fact that Scott's restaurants received poor ratings, including a rating of "F" in one store. Another compelling factor was Scott's poor relationship with the McDonalds' regional manager. *Id.*

The report further notes that although it was never McDonalds' intention to award Scott the new franchise, Schubot would not have been chosen for the new site based upon the evaluations of his existing franchises. *Id.* at 6, 22.

3. In *Golden,* the defendant promised the plaintiff that plaintiff had a tremendous future with the company, and that the defendant would replace all of the plaintiff's gas pumps. The court found that these promises were an inducement to plaintiff to enter into the contract. *Golden,* 882 F.2d at 494.

The case at bar, however, may be distinguished as the plaintiffs have disclaimed all of their rights acquired from Richard Schubot. The written lease and licensing agreements between the parties does not contain any references to the defendants' representations. Thus, it is unreasonable for plaintiffs to state that they could have relied upon the representations.

There is no issue whether the statements were made to the plaintiffs. It is the judgment of this Court, as a matter of law, that the statements were not false when made.

**1356**

a McDonald's operator, or that Scott would be treated in any particular way with respect to expansion.

The release and disclaimer clauses signed by Scott Schubot, destroy plaintiffs' claims of justifiable reliance on oral representations that occurred *before* the new franchise agreement between Scott and McDonalds was entered into. Clauses releasing parties and disclaiming liabilities, such as these involved in the instant litigation, overcome any oral representations not contained in the written franchise agreement. *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 829 (D.Minn.1989); *Durkee v. Goodyear Tire & Rubber Co.,* 676 F.Supp. 189, 193 (W.D.Wis.1987) (holding that it is unreasonable for plaintiffs to rely on oral representations made before a contract when the contract contained a clause which "expresse(d) completely the obligations and promises of both parties...."). [4]

■ Reliance upon oral representations, even if false, is unreasonable if the party enters into a subsequent agreement. *3 P.M. Inc. v. Basic Four Corp.,* 591 F.Supp. 1350, 1367 (E.D.Mich.1984) (Plaintiff's reliance on an oral statement unreasonable after the defendants had expressly refused to include a similar provision in the contract). Any reliance on the defendants' alleged misrepresentations is unreasonable because the statements were not contained in the subsequent, written agreement. *Rosenberg v. Pillsbury Co.,* 718 F.Supp. 1146, 1152 (S.D.N.Y.1989). *Saunders Leasing System v. Gulf Central Distribution Center, Inc.,* 513 So.2d 1303, 1306–1307 (Fla. 2 D.C.A.1987). [5]

"Extrinsic evidence may not be considered ... to contradict the written terms unless the court first decides that the parties did not intend the writing to be a final or complete contract." *Intercorp, Inc. v. Pennzoil Co.,* 877 F.2d 1524, 1529 (11th Cir.1989) (applying Alabama law to an al-

leged breach of export distributor sales agreement).

In this case, there is no evidence that the parties did not intend the new franchise agreement to be a final agreement. Accordingly, any reliance by Scott Schubot on oral representations allegedly made to third parties before the new contracts were executed are insufficient as a matter of fact and law. Thus, plaintiffs' claim of fraud in the inducement must fail.

**B.  Count    II—McDonalds    alleged  Fraud in General**

In Count II, the plaintiffs allege defendants made further fraudulent statements after the July 1, 1985 transaction date. The plaintiffs state that the defendants continued to assure the plaintiffs that they would be "treated fairly and considered for expansion and expan(sion) in the same manner as any other McDonalds franchise," which statement was false. Complaint ¶ 61. Specifically, plaintiffs allege that McDonalds did not disclose its plans to open a new McDonalds restaurant near the plaintiffs' existing restaurant.

To prove fraud, a plaintiff must allege that the defendant made a false statement, known to be false at the time it was made, for the purpose of inducing the plaintiff to act in reliance upon the statement. *Golden,* 882 F.2d at 494; *Cavic v. Grand Bahama Development Co., Ltd.,* 701 F.2d 879, 883 (11th Cir.1983); *Saunders,* 513 So.2d at 1306.

The Court notes that the defendants had no *duty* to consider the plaintiffs for any new Palm Beach restaurant, nor did the plaintiffs have any *right* to be considered for one. The plaintiffs had agreed to forego any of the rights they might have acquired from Richard Schubot, rights that might have entitled them to expand their operations in Palm Beach County.

---

**4.** *See also Jackvony v. Riht Financial Corp.,* 873 F.2d 411, 416 (1st Cir.1989); *One-O-One Enterprises, Inc. v. Caruso,* 848 F.2d 1283, 1287 (D.C. Cir.1988); *Coal Resources, Inc. v. Gulf & Western Industries,* 756 F.2d 443, 446–447 (6th Cir. 1985); *Zobrist v. Coal-X, Inc.,* 708 F.2d 1511, 1518 (10th Cir.1983).

**5.** *See also Zobrist,* 708 F.2d at 1158; *Platsis v. E.F. Hutton & Co.,* 642 F.Supp. 1277, 1299 (W.D. Mich.1986); *Kennedy v. Josephthal & Co., Inc.,* 635 F.Supp. 399, 404–405 (D.Mass.1985), *aff'd,* 814 F.2d 798 (1st Cir.1987).

Federal Rule of Civil Procedure 9(b) calls for a plaintiff to plead all circumstances of the alleged fraud *with particularity*. The plaintiffs have failed to point to *any representations* made *personally* to Scott Schubot after the execution of the July 1, 1985 franchise agreement. Scott Schubot himself admits that he personally made inquiries as to whether there was going to be an expansion in Palm Beach County, but received no response or information from the defendants. Appendix to Defendants' Motion for Summary Judgment on Counts I and II ("Defendants' Count I and II Appendix"), Exhibit 9 at 142.

Additionally, Scott Schubot could not have justifiably relied on any such alleged misrepresentations since he *knew* that he had no legal right to any expansion in Palm Beach County. Any right to expansion Scott might have acquired from his father was disclaimed by Scott in the new franchise agreement he signed with McDonalds. "A promise of future action ... cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it, and it is not false when made." *Cavic*, 701 F.2d at 883–884 (representations about land appreciation, resale factors and recovery of equity were merely "puffing" or statements of opinion, not representations of present or future facts); *Golden*, 882 F.2d at 494.

The plaintiffs have not plead that the promisor (the defendants) had the positive intent not to perform any promise or made any promise with the present intent not to perform that promise. *Golden*, 882 F.2d at 495. Plaintiffs point to nothing in the record to support this claim of fraud. In fact, the ombudsman's report clearly states that the plaintiffs would have been considered had they compiled a satisfactory record at their restaurants.

### C. *Count III—McDonalds alleged violations of Florida Statutory Law*

#### 1. Alleged Florida Statute Chapter 559 Violation

Plaintiffs have alleged that the defendants made certain misrepresentations concerning "the prospects and chances for the success of the Plaintiff's McDonalds restaurants...." The plaintiffs, therefore allege that the defendants "misrepresent(ed) the potential for (plaintiffs') expandability and growth(,)" violating Florida Statute Chapter 559. Complaint, ¶ 68(b).

The Florida Sale of Business Opportunities Act, Florida Statutes § 559.80, *et seq.*, prohibits certain acts surrounding sales or leases of "business opportunities".

Section 559.801(1) states, in pertinent part that a " '[b]usiness opportunity' means the sale of any products, equipment, supplies, or services which are sold to a purchaser to enable the purchaser to start a business...." Further, the statute states that a " '[b]usiness opportunity' does not include the sale of ongoing businesses when the owner of those businesses sells and intends to sell only those business opportunities so long as those business opportunities to be sold are no more than five in number...." Fla.Stat.Ann. § 559.801(1) (West 1988).

The defendants correctly argue that this statute simply does not apply to the instant matter. The franchise purchases made by Scott Schubot were existing, ongoing businesses *owned by Richard Schubot*. The *owner* of the business sold was *not* the defendants, but rather the plaintiff's father, Richard Schubot. Section 559.801(1), *et seq.* simply does not apply to this transaction.

#### 2. Alleged Florida Statute Chapter 817 Violation

Again, the plaintiffs allege that the defendants made certain misrepresentations concerning "the prospects and chances for the success of the Plaintiff's McDonalds restaurants...." The plaintiffs, therefore allege violations of Florida Statute Chapter 817, The Florida Franchise Disclosure Act. Complaint, ¶ 68(b).

In this instance, the Court is directed towards Florida Statute § 817.416, a criminal statute, which prohibits fraudulent acts in the sale or establishment of business opportunities.

Specifically, § 817.416(2)(a) states that:

It is unlawful, when selling or establishing a franchise or distributorship, for any person:

1. Intentionally to misrepresent the prospects or chances for distributorship;

2. Intentionally to misrepresent, by failure to disclose or otherwise, the known required total investment for such franchise or distributorship; or

3. Intentionally to misrepresent or fail to disclose efforts to sell or establish more franchises or distributorships than is reasonable to expect the market or market area for the particular franchise or distributorship to sustain.

Fla.Stat.Ann. § 817.416(2)(a) (West 1988).

In this case, however, the plaintiffs have not established that the defendants made any misrepresentations when the defendants *themselves* were selling the McDonalds franchises. It is well settled in this matter, and the material facts are not in dispute, that Scott Schubot purchased the McDonalds franchises from his father, Richard Schubot, and not from the defendants directly. McDonalds sold no franchises to the plaintiffs and hence Chapter 817, Florida Statutes, is inapplicable here.

### D. *Count IV—McDonalds' Alleged Breach of Contract*

In this claim, plaintiffs argue that the defendants breached their contract with Scott Schubot by not considering Scott Schubot for the new franchise in Palm Beach County. Specifically, the plaintiffs state that the defendants made certain representations that Scott Schubot would be treated "as any other owner/operator" and considered for any new Palm Beach County franchise, and that these promises were not kept. Hence, the plaintiffs claim breach of contract.

The new license and lease agreement between the plaintiffs and the defendants included several clauses acting as disclaimers and waivers of any expansion rights

that Scott Schubot may have acquired from his father. Further, the new contracts between the plaintiffs and the defendants do not contain any of the representations that the plaintiffs assert were made.

■ In Florida, it is well settled that representations which are made before or during the signing of a contract, such as those allegedly made to Scott Schubot's father, "are presumed to have merged in the written agreement." *First Union Discount Brokerage Services v. Milos*, 744 F.Supp. 1145, 1153 (S.D.Fla.1990) (involving margin agreements concerning security transactions), *citing, Azar v. Richardson Greenshields Sec., Inc.*, 528 So.2d 1266, 1269 (Fla. 2 D.C.A.1988). Verbal statements between the contracting parties prior or during the execution of a contract merge into the subsequent written contract. *Valenti v. Coral Reef Shopping Center, Inc.*, 316 So.2d 589, 592 (Fla. 3 D.C.A.1975) (statements surrounding an oral lease not applicable when a subsequent written lease was signed); 11 Fla. Jur.2d (Contracts) § 165 (1990).

■ Any representations made to the Schubots were made before the execution of all contracts. Scott Schubot thereafter signed a new written contract. The Court will not give any credit to any of these alleged misrepresentations. The Court must and will interpret the contracts as the final documents and agreements amongst these parties. Accordingly, it will enforce them *as written* and *signed*.[6]

If the Parol Evidence Rule and the Statute of Frauds have both been rendered comatose under the repeated blows of modern judicial rulings, let us hope that this decision will help to revive them.

### E. *Count VI—McDonalds alleged interference with business relationships.*

In Count Six, the plaintiffs allege that an advantageous business relationship existed

---

**6.** The *Milos* court also noted that oral statements made before or during the making of a written contract would be inadmissible as parol evidence unless the statements would contradict unambiguous language. *Milos*, 744 F.Supp. at 1153; *See also, Chase Manhattan Bank v. Rood*, 698 F.2d 435, 436 (11th Cir.), *rehearing denied*, 703 F.2d 582 (11th Cir.1983). The parol evidence rule clearly applies here, as statements made to Schubot do not address any issue in the agreements between Schubot and the defendants.

between them and the defendants. Because the defendants did not award the new Palm Beach County franchise to the plaintiffs but instead awarded the franchise to themselves, plaintiffs allege that the defendants interfered with their business. Complaint, ¶¶ 89–90.

 To establish liability under the tort of interference with a business relationship, a plaintiff must prove: (1) that a business relationship existed under which the plaintiff had legal rights; (2) that the interferor knew of the relationship; (3) that the interferor intentionally and unjustifiably interfered with the relationship; and (4) that damages resulted from the breach. *Gregg v. U.S. Industries, Inc.*, 887 F.2d 1462, 1473 (11th Cir.1989); *Symon v. J. Rolfe Davis, Inc.*, 245 So.2d 278, 280 (Fla. 4 D.C.A.1971); 32 Fla.Jur. (Interference) § 5 (1990).

As we have seen, the plaintiffs had no legal right to any new McDonalds franchise to be awarded in Palm Beach County. In the Absence of a legal enforceable right to the creation of such a future business relationship, the elements of this tort are simply absent.

Count VI, therefore, must likewise stand dismissed.

The Court has reviewed the respective cross-motions for summary judgment of all the parties along with the record in this matter.

The Court finds that there is no genuine issue of material fact and that the defendants are entitled to Summary Judgment as a matter of law.

Accordingly, it is:

ORDERED and ADJUDGED as follows, that:

(1) Plaintiffs' motion for Summary Judgment be and the same is hereby DENIED;

(2) Defendants' motion for Summary Judgment be and the same is hereby GRANTED;

(3) Final Judgment will be entered on behalf of the defendants and against the plaintiffs;

(4) Costs will be taxed against the plaintiffs upon the appropriate application; and

(5) Defendants should submit a proposed form of Final Judgment for entry in this case within ten (10) calendar days from the date hereof.

DONE AND ORDERED.