**Sam P. JANKOVICH, Jr. and Jankco Holding Corporation, a Florida corporation, Plaintiffs,**

v.

**Al BOWEN a/k/a Alfred Bowen, Tom Bowen a/k/a Thomas J. Bowen, Energy Products of the Future, Inc., a dissolved Arizona corporation, TJB Construction, Inc., a dissolved Arizona corporation, Phillip E. Broadbent and Broadbent, Walker & Wales, P.L.C., a professional liability corporation, Defendants.**

No. 93–720–CIV.

United States District Court, S.D. Florida.

Jan. 18, 1994.

Rhonda L. Montoya, Lapidus & Frankel, P.A., Miami, FL, for plaintiffs.

Constantine G. Nichas, McGrane & Nosich, P.A., Miami, FL, for defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AS TO DEFENDANTS' COUNTERCLAIM

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes to this Court upon Plaintiffs/Counterdefendants' Motion to Dismiss and Motion for Final Summary Judgment (D.E. # 14), filed August 12, 1993. Defendants/Counterclaimants filed a memorandum of law in opposition (D.E. # 26) on September 17, 1993. Plaintiffs filed their reply (D.E. # 30) on October 1, 1993. The issues were fully briefed and oral argument held.

## I. HISTORICAL BACKGROUND OF THE CASE

This case involves a settlement agreement entered into by the parties to resolve a dispute that arose out of the wrongful transfer of certain stock.

In 1991, Defendants owned stock in Peripheral Systems, Inc. ("PSI stock") and directed Philip Talbert of PSI to transfer a portion of the stock to specified individuals and corporations in the care of Dean Witter Reynolds through Plaintiff Jankovich, as its representative. Shortly thereafter, Defendants learned that 251,000 shares of their PSI stock had been transferred to a Florida corporation, known as Advanced Resonant Technology, Inc., contrary to their instructions. Plaintiff Jankovich owned a controlling interest in Advanced Resonant Technology, Inc. and refused to return the PSI stock despite Defendants' demand. After lengthy negotiations, the parties executed a Settlement and Release Agreement (the "Agreement") which became effective on December 27, 1991.

Under the terms of the Agreement, Plaintiff Jankovich agreed to transfer 45,000 shares of stock of JANKCO HOLDING CORPORATION to Defendant Tom Bowen. In exchange, Defendants agreed to release him from any and all claims they had against him or any claims of which they might later become aware involving the dispute that existed at that time. By the parties' express words, the Agreement constitutes the settlement of all claims between them, except for those that might arise out of the rights and obligations created by the Agreement.

The instant case stems from a dispute over a provision in the Agreement dealing with the registration rights of the 45,000 shares transferred to Tom Bowen. Paragraph seven of the Agreement states:

> It is acknowledged between the parties to this Agreement that the 45,000 shares issued to Thomas J. Bowen shall have piggy back registration rights in the event that JANKCO HOLDING CORPORATION is successful in completing another under-

writing following two (2) years after the issuance.

At the time of the execution of the Agreement and at the time of the filing of this suit, JANKCO HOLDING CORPORATION was in the process of completing its first public offering. Plaintiffs did not include the 45,000 shares transferred under the Agreement in this underwriting and Defendants thought it a violation of the terms of the Agreement.

After some communication between the parties' counsel, Plaintiffs filed an action in state court[1] seeking a declaratory judgment that they had fully complied with the Agreement and were not required to register the 45,000 shares. Plaintiffs further sought damages for tortious interference with a business relationship and libel, based on an allegedly libelous letter that Defendants sent to the underwriter of Plaintiffs' public offering accusing them of fraud, securities law violations and racketeering. Plaintiffs claim that due to Defendants' letter, the public offering failed. Defendants removed the case to this Court on diversity grounds and filed an Answer, Affirmative Defenses and Counterclaims (D.E. # 15) on July 16, 1993. Plaintiffs (hereafter referred to as Counterdefendants) now seeks an order of dismissal or entry of summary judgment as to Defendants' (hereafter referred to as Counterclaimants) counterclaims pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.

The Court will first consider whether the counterclaim survives the Motion to Dismiss as a threshold inquiry, because if Counterclaimants fail to state a claim under Rule 12(b)(6), a summary judgment inquiry would be irrelevant.

## II. MOTION TO DISMISS

This Court is generally hesitant to grant motions to dismiss for failure to state a claim based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under the liberal pleading rules codified in Rule 8(a), the plaintiff is only required to make a short plain state-

---

1. Plaintiffs filed the original action in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida.

ment of the facts that would enable defendant to frame a responsive pleading. Fed. R.Civ.P. 8; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, a motion to dismiss is justified only where the complaint clearly indicates that the plaintiff has no claim.

For purposes of a motion to dismiss, the Court must read the complaint in the light most favorable to the plaintiff and take all allegations made by the plaintiff as true. 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990). The test for determining the sufficiency of the complaint is whether the non-moving party can prove any set of facts in support of the claim that would entitle him or her to relief. *Id.* Therefore, a motion to dismiss will succeed only if no factual scenario would entitle the plaintiff to relief.

The Court has carefully considered each of the seventeen[2] counts laid out in the Counterclaim and finds that sixteen of the counts must fail for failure to state a claim upon which relief can be granted.

### A. Counts involving acts occurring prior to the Agreement

It is well settled that a valid release agreement acts retroactively to release all claims arising out of conduct that occurred prior to the execution of the release. *Pettinelli v. Danzig,* 722 F.2d 706 (11th Cir.1984). Nevertheless, Counterclaimants have asserted at least three claims based on actions and events that occurred prior to the signing of the Agreement. (Counterclaim, Counts IX, XI and XIV). Apparently, Counterclaimants base these claims on the theory that the Agreement does not constitute a valid settlement and release agreement under the law. Therefore, the Court will first address those claims going to the validity of the Agreement.

### 1. Count XIII: Fraudulent Inducement

In Count XIII, Counterclaimants argue that Counterdefendants fraudulently induced them to enter into the Agreement by deliberately making false representations regarding the registration of the 45,000 shares of stock being transferred to Counterdefendants. As a result, Counterdefendants urge the Court to invalidate the Agreement. To maintain a claim for fraudulent inducement, Counterclaimants must show (1) that Counterdefendants misrepresented a material fact, (2) that Counterdefendants knew or should have known that the statement was false, (3) that Counterdefendants intended that the representation would induce them to enter into the Agreement, and (4) that Counterclaimants were injured by acting in justifiable reliance on the misrepresentation. *Schubot v. McDonalds Corp.,* 757 F.Supp. 1351, 1355 (S.D.Fla.1990), *aff'd* 963 F.2d 385 (11th Cir.1992).

Counterclaimants' claim is flawed on two grounds. First, they have failed to show that a material misrepresentation was made; and second, even if they could show a material representation, Counterclaimants have failed to show that their reliance on such misrepresentation was reasonable. The Agreement specifically states that "this Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and replaces and supersedes any prior or contemporaneous oral or written representations, agreements or understandings . . ." (Agreement, paragraph 9). Notwithstanding this merger clause, Counterclaimants contend that Counterdefendants made certain misrepresentations regarding the registration of the 45,000 shares of JANKCO stock transferred to them. For instance, Counterclaimants claim that Counterdefendants assured them that the stock would be registered in the first public offering. Such an assurance constitutes a promise of future action, which "cannot, standing alone, be a basis for fraud because it is not a representation, there is no right to rely on it and it is not false when made." *Cavic v. Grand Bahama Dev. Co.,* 701 F.2d 879, 883–884 (11th Cir.1983). Furthermore, even if it did constitute a misrepresentation, the issue of registration rights was fully addressed in

---

**2.** Counterclaimants improperly numbered the counts in their counterclaim. Some numbers are duplicated and others are skipped. There-

fore, to simplify the confusion, the Court will refer to the counts by numbers corresponding to the order in which they appear in the complaint.

Paragraph seven (7) of the Agreement which specifically states that the stock would have piggy back registration rights "in the event that JANKCO HOLDING CORPORATION is successful in completing *another* underwriting following two (2) years after the issuance." (Agreement, paragraph 7, emphasis added). It is well settled that "any alleged misrepresentations made prior to the Release merge into the Release clauses that address the same terms or representation." *Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir.1984). Therefore, Counterclaimants cannot establish the existence of any material misrepresentation, whether it is an alleged promise of future action or not.

Furthermore, even if Counterclaimants could prove the existence of misrepresentations, their claim for fraudulent inducement would still fail because they have not shown that their reliance on such representations was reasonable. At the time the Agreement was executed, the parties were in an adversarial relationship. Counterclaimants had accused Counterdefendants of misappropriating the PSI stock and the Agreement was executed to settle all claims arising therefrom. The Eleventh Circuit has held that "[w]hen negotiating or attempting to compromise an existing controversy over fraud and dishonesty it is unreasonable to rely on representations made by the allegedly dishonest parties." *Pettinelli* at 710. Thus, Counterclaimants' claim for fraudulent inducement must be extinguished because parties to an adversarial relationship, such as Counterclaimants, cannot justifiably claim that they relied on alleged misrepresentations. Accordingly, the Court will dismiss Count XIII of the Counterclaim.

### 2. Counts X and XII: Fraud and Negligent Misrepresentation

■■■■ Counterclaimants' claims for fraud [3] and negligent misrepresentation [4] in Counts X and XII are similarly flawed. Under Florida law, both common law fraud and negligent misrepresentation require a showing that the injured party relied on the misstatements. *Souran*, 982 F.2d 1497; *Alna Capital Assoc. v. Wagner*, 758 F.2d 562 (11th Cir.1985). As discussed above, Counterclaimants cannot now claim that they reasonably relied on misstatements made prior to the signing of the Agreement. "Reliance upon oral representations, even if false, is unreasonable if the party enters into a subsequent agreement." *Schubot* at 1356. This is not to say that a party in Counterclaimants' position can maintain no cause of action. If the alleged misrepresentations were included in the contract and were not performed, then an action for breach of contract would lie.

### 3. Counts XI, XIV and IX: Conversion, Failure to Supervise and Unjust Enrichment

■■ In light of the Court's holding that Counterclaimants have not established foul play in the execution of the contract, the Court finds that the Agreement is both valid and binding. This holding is consistent with the policy favoring the finality of settlements. *Pettinelli* at 710. By the clear intent of the parties, the Agreement constitutes their voluntary release of all claims against one another that might arise from the dispute over the alleged misappropriation of the PSI stock. As such, Counterclaimants have waived their right to assert claims against Counterdefendants for conversion of the PSI stock, for failure of Plaintiff corporation JANKCO to supervise their employee/officer Jankovich in the transfer of the PSI stock, and for unjust enrichment accruing to Counterdefendants as a result of their acquisition of the PSI stock. Accordingly, Counts IX, XI and XIV must be dismissed for failure to state a claim upon which relief can be granted.

---

**3.** "To prove fraud, [Defendants] must allege that [Plaintiffs] made a false statement, known to be false at the time it was made, for the purpose of inducing [Defendants] to act in reliance upon the statement." *Schubot* at 1356.

**4.** A claim for negligent misrepresentation requires a showing that (1) the representor made a misrepresentation of a material issue of fact, (2) without knowledge of its truth or falsity or under circumstances in which representor ought to have known that it was false (3) with the intention that it induce the defendant to act (4) resulting in an injury to the party who justifiably relied on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir.1993).

## B. Counts based on events occurring simultaneously with the execution of the Agreement

A more difficult inquiry concerns those claims based on conduct occurring simultaneously with the execution of the Agreement. Counterclaimants assert various securities law claims based on Counterdefendants' allegedly false statements regarding the registration rights made during the negotiations of the Agreement. Although each of these claims involves conduct which occurred prior to the execution of the Agreement, the causes of action for these alleged statutory violations did not arise until the actual signing of the Agreement transferring the stock to Counterdefendants. Such conduct does not fit neatly into those categories clearly covered or not covered by the Agreement. Therefore, the Court will evaluate each of the claims independently.

### 1. Count II: Securities Fraud under Section 10(b) of Securities Exchange Act of 1934 and SEC Rule 10b–5

In Count II, Counterclaimants allege that Counterdefendants violated Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5 by intentionally employing deceptive devices in the transfer of the JANKCO stock. However, reliance is an essential element of a securities fraud claim under section 10(b) and Rule 10b–5, *Landy v. Federal Deposit Ins. Corp.*, 486 F.2d 139 (3d Cir.1973), *cert. denied*, 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974); *Ross v. Bank South, N.A.*, 885 F.2d 723 (11th Cir.1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924, 109 L.Ed.2d 287 (1990), and, under *Pettinelli*, it is unreasonable for Counterclaimants to claim reliance on any misstatements that Counterdefendants may have made during the negotiations to the Agreement. Therefore, Counterclaimants have failed to sufficiently establish the element of reliance necessary to state a claim for securities fraud under Section 10(b) and Rule 10b–5 and Count II must fail.

### 2. Counts IV and VIII: State Fraud Claims

Counterclaimants' inability to establish reasonable reliance must also defeat their claims for fraud in the sale of securities under both Florida and Arizona's anti-fraud statutes. Fla.Stat. § 517.301; Ariz.Rev.Stat. Ann. § 44–1991. Florida's anti-fraud statute clearly requires proof of reliance by the allegedly defrauded party. *In re Sahlen & Assoc., Inc. Secur. Litigation*, 773 F.Supp. 342 (S.D.Fla.1991). Although Arizona's anti-fraud statute, A.R.S. § 44–1991, is less clear, the Court interprets the statute as embodying a reliance requirement. While the Arizona Court of Appeals has held that reliance is not a necessary element to state a claim under A.R.S. § 44–1991, *Rose v. Dobras*, 128 Ariz. 209, 624 P.2d 887, 892 (Ct.App.1981), the federal courts have interpreted the statute to require a plaintiff in a non-public action to prove that he or she reasonably relied on the defendant's misstatements. *McDaniel v. Compania Minera Mar de Cortes*, 528 F.Supp. 152, 166 (D.Ariz.1981). Since the instant case closely resembles the non-public action adjudicated in *McDaniel*, the Court is inclined to follow the District Court's interpretation of Arizona's anti-fraud statute in that case. Even if reliance were not a necessary element of Arizona's anti-fraud statute, however, Counterclaimants' claim would still be insufficient; as previously discussed, Counterclaimants have not established the existence of a material misrepresentation. Accordingly, the Court holds that Counterclaimants have failed to state a claim under either Florida or Arizona's anti-fraud statutes because they have not established that their reliance was reasonable as required under these statutes and, alternatively, because they have not shown that the misrepresentations were made. Thus, Counts IV and VIII will be dismissed under Rule 12(b)(6).

### 3. Count I: Securities Fraud claims for violation of Section 12(2) of the Securities Act of 1933

Counterclaimants' allegation of securities fraud claims under Section 12(2) of the Securities Act of 1933 in Count I is more difficult to resolve. Count I alleges that Counterdefendants' "conduct in the sale and/or offering of JANKCO stock" violated

section 12(2), which prohibits the use of the mails or other means of interstate commerce to perpetrate securities fraud. (Counterclaim, p. 9). Unlike the previously discussed securities fraud statutes, Section 12(2) does not require a showing of reliance by the moving party and therefore does not fit squarely within the *Pettinelli* case. *See Wright v. National Warranty Co., L.P.,* 953 F.2d 256 (6th Cir.1992); *Haralson v. E.F. Hutton Group, Inc.,* 919 F.2d 1014 (5th Cir. 1990), *modified* (5th Cir.1991). However, the Court is of the opinion that this statute does not envision the factual situation presented by the instant case. Section 12(2) was enacted to protect the interests of the purchaser of fraudulent securities by creating a private right of action against the seller. Congress specifically did not require a showing of reliance simply to lower the evidentiary standard and provide purchasers an easier route into court. However, those purchasers that this statute is intended to protect are parties engaged in typical securities transactions. The statute does not contemplate the sort of adversarial context in which the disputed JANKCO securities were transferred. Where adversarial parties enter into an agreement to resolve preexisting differences, they stand in a different position than transactional parties. Adversaries are on notice and should take more care in their negotiations. Therefore, as a matter of policy, it is not unreasonable nor inequitable to hold adversarial parties to a higher burden of proof for claims involving dishonesty and deceit. The Court, thus, finds that where the parties have reason to suspect dishonesty or misrepresentation, they cannot later assert claims based on fraud or deceit, including claims based on Section 12(2), without a showing of reasonable reliance.

■ As such, *Pettinelli* controls and the Court holds that it was unreasonable for Counterclaimants to have simply relied on misstatements made during the negotiations of the Agreement, given their adversarial position. To justify their reliance, Counterclaimants should have either included the

representation in the agreement, or, at the very least, employed some measure of due diligence to verify the representations.[5] The Court is not holding that the performance of due diligence necessarily makes an adversarial party's reliance reasonable. It is simply suggesting that, in this case, some effort by Counterclaimants to ensure the truth of the alleged misrepresentations would have lent more credence to their claims. Even despite the Courts finding that a § 12(2) claim made by an adversarial party requires a showing of reliance, Counterclaimants' claim must still be extinguished because all representations made prior to the execution of the Agreement were merged into the written agreement and the Court must interpret that contract as written. Accordingly, for these reasons, Count I of the Counterclaim must be dismissed.

### 4. Counts III and VI: Violations of State Securities Registration Requirements

In their Counterclaim, Counterclaimants allege that Counterdefendants violated state securities registration requirements in both Florida and Arizona. Fla.Stat. § 517.01 *et seq.*; A.R.S. §§ 44–2001 and 44–2002. The Court has determined that there is insufficient evidence in the record regarding the nature of the JANKCO stock transfer to pass on the sufficiency of the claim at this time. Therefore, the Court will deny Plaintiff's Motion to Dismiss in regard to Counts III and VI without prejudice for Counterdefendants to reassert their position at the Pre–Trial Conference.

### 5. Counts V and VII: Racketeering

■ Viewing the evidence in the light most favorable to Counterclaimants, the allegations in the Counterclaim do not rise to the level of fraud, and therefore Counterclaimants cannot maintain an action for racketeering under either Florida or Arizona's statutory law. Fla.Stat. §§ 895.01 *et seq.*; A.R.S. §§ 44–2001 and 44–2002. Consequently,

---

5. The Court is cognizant of those cases holding that claims made under Section 12(2) do not require a showing of due diligence. However, the Court finds that situations, such as that pre-

sented by this case, in which adversarial parties negotiate a settlement agreement, are distinguishable from the transactional relationship of the typical securities sale.

Counts V and VII will be dismissed pursuant to Rule 12(b)(6).

## C. Count XVI: Defamation

In Count XVI, Counterclaimants make a bare allegation of defamation which is not supported by the facts as alleged. Therefore, Count XVI will be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

## D. Count XVII: Damages

In Count XVII, Counterclaimants set forth a prayer for damages flowing from the various violations alleged in their Counterclaim. Count XVII, however, simply lays out the relief requested; it does not state a claim upon which relief can be granted. Therefore Count XVII will be dismissed.

## E. Counts based on events that occurred after the Agreement: Count XV—Breach of Contract

■ Whether a release agreement acts prospectively to cover events occurring subsequent to the signing of the agreement is dependent on the express intentions of the parties to the agreement. In this case, the Agreement does not reflect an intention of prospectivity. In fact, the Agreement specifically states that the parties do not release one another from the obligations created by the Agreement. (Agreement, para. 3 & 5, pp. 3–4). Therefore, Counterclaimants' claim for breach of contract at Count XV is not foreclosed by the existence of the Agreement. Counterclaimants claim that the Agreement required Counterdefendants to register the 45,000 shares of JANKCO stock in its first public offering following the execution of the contract and that, in failing to do so, Counterdefendants breached the Agreement. Such allegations are sufficient to maintain an action for breach of contract. Thus, Count XV passes the Court's initial inquiry. However, whether it survives summary judgment is a separate question.

## III. SUMMARY JUDGMENT

Summary judgment may only be granted where it is shown that no genuine dispute as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In ruling on such a motion, the Court must view the evidence in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The only issue to be considered on summary judgment is the breach of contract claim asserted in Count XV. As discussed above, Count XV involves a question of contractual interpretation. Counterclaimants claim that Counterdefendants violated the terms of the Agreement by not including their 45,000 shares of JANKCO stock in its public offering. Counterdefendants, on the other hand, argue that the terms of the Agreement did not require them to register the stock until the second public offering. It is undisputed that the Parties entered into the release agreement, that Counterdefendants were negotiating an underwriting agreement at the time of the execution, that the same underwriting agreement is the subject of this dispute, that no other underwriting agreement has been completed since the execution of the Agreement, and that Counterdefendants did not include Counterclaimants' 45,000 shares of stock in the disputed underwriting. The only issue in dispute is whether the Agreement required Counterdefendants' to include Counterclaimants' stock in the disputed underwriting, and if so, whether Counterdefendants' failure to do so constitutes a breach of the Agreement. The resolution of this question requires an interpretation of the Agreement which is clearly a question of law appropriate for summary judgment.

■ The Agreement itself states at paragraph 7 that the stock would have piggy back registration rights "in the event that JANKCO HOLDING CORPORATION is successful in completing *another* underwriting following two (2) years after the issuance." (Agreement, paragraph 7, emphasis added). To resolve the present dispute, the Court must decipher the meaning of this provision. In doing so, however "[e]xtrinsic evidence may not be considered ... to contradict the written terms unless the court first decides that the parties did not intend the writing to be a final or complete contract." *Schubot* at

1356 (quoting *Intercorp, Inc. v. Pennzoil Co.*, 877 F.2d 1524, 1529 (11th Cir.1989)). There is no evidence to support a finding that the parties did not intend the Agreement to be a final contract. In fact, the Agreement itself specifically expresses the parties' intent that the Agreement constitute a full and fair settlement of all claims. Paragraph 1 of the Agreement states: "It is the intent of this Agreement to resolve, fully and forever, the disputes among the parties hereto pursuant to the terms herein contained." In light of this clear language, the Court cannot find that the parties did not intend the Agreement to be final and holds, therefore, that no extrinsic evidence may be introduced to contradict the written terms. Therefore, the Court will limit its inquiry to a strict contractual interpretation of paragraph 7.

 Webster's New Collegiate Dictionary defines "another" as "being one more in addition to one or more of the same kind," implying that something already exists to which "another" will be added. The fact that, at the time the parties executed the Agreement, Counterdefendants were in the process of negotiating the underwriting agreement that gave birth to this dispute, convinces the Court that, as a matter of law, the parties intended the registration rights to accrue upon the success of an *additional* underwriting, distinct from the one in existence at the time of the execution. If the parties had intended the registration rights to be triggered upon the first completed underwriting following two years after the Agreement, they could have indicated as much in the Agreement. Since they did not, the Court must accept the contract as written. Therefore, since no additional underwriting has occurred, distinct from the one in negotiation at the time the Agreement was executed, Counterdefendants' obligation to register the stock has not been triggered. Accordingly, the Court finds that Counterdefendants did not breach the Agreement by not yet registering the stock.

### IV. CONCLUSION

For the reasons articulated above, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Plaintiffs/Counterdefendants' Motion to Dismiss or, in the Alternative, for Summary Judgment as to Defendants' Counterclaim be, and the same is hereby, GRANTED IN PART AND DENIED IN PART as follows:

1. As to Counts I (Securities Act § 12(2)), II (Securities Act § 10(b) and SEC Rule 10(b)(5)), IV (ARS § 44–1991), V (ARS § 13–2301 *et seq.*), VII (Fla.Stat. § 895.01 *et seq.*), VIII (Fla.Stat. § 517.-301), IX (unjust enrichment), X (fraud), XI (conversion), XII (negligent misrepresentation), XIII (fraudulent inducement), XIV (failure to supervise), XVI (defamation) and XVII (damages), Plaintiffs/Counterdefendants' Motion to Dismiss be, and the same is hereby, GRANTED. Counts I, II, IV, V, VII, VIII, IX, XI, XII, XIII, XIV, XVI and XVII of the Counterclaim are hereby dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

2. As to Counts III (ARS §§ 44–2001 and 44–2002) and VI (Fla.Stat. § 517.01 *et seq.*) of the Counterclaim, Plaintiffs/Counterdefendants' Motion to Dismiss be, and the same is hereby, DENIED without prejudice to be reasserted at the pretrial conference.

3. As to Count XV (Breach of Contract) of the Counterclaim, Plaintiffs/Counterdefendants' Motion for Summary Judgment be, and the same is hereby, GRANTED.

DONE and ORDERED.