**HCFA ASSOCIATES CORP.,** and **B.T.N.H., Inc., Patrick F. Donnellon, Jr., Harry Satin, Anthony Salerno,** and **Jeffrey N. Sunshine, Plaintiffs,**

v.

**Kurt GROSMAN, Defendant.**

**No. CV 96–1332 (ADS).**

United States District Court, E.D. New York.

March 22, 1997.

J. Lawrence Blades, Gregor F. Gregorich, New York City, for Plaintiffs.

Hodgson, Russ, Andrews, Woods & Goodyear, L.L.P., Buffalo, NY (Garry Graber, John C. Krenitsky, of counsel), for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This lawsuit arises as the result of an agreement entered into between the parties. According to the plaintiffs, HCFA Associates Corporation d/b/a Healthcare Associates ("Healthcare"), B.T.N.H., Inc. ("BTNH"), Patrick Donnellon ("Donnellon"), Harry Satin ("Satin"), Anthony Salerno ("Salerno") and Jeffrey Sunshine ("Sunshine," collectively the "plaintiffs"), they were fraudulently induced to execute an agreement (the "Terms Sheet" or the "Agreement") with the defendant, Kurt Grosman ("Grosman" or the "defendant"), under which the parties would purchase a leasehold interest in certain real property at a bankruptcy auction sale for the purpose of operating a nursing home.

Presently before the Court are: (1) the defendant's motions to dismiss for failure to state a claim and for judgment on the pleadings pursuant to Fed. R. Civ. 9(b), 12(b)(6) and 12(c) with respect to counts one and two of the amended complaint; and for judgment in his favor with respect to the first counterclaim; and (2) the cross motion of the plaintiffs for leave to file a second amended complaint.

At the outset the Court makes two comments. First, the Court recognizes that the defendant has seen fit to use 15 footnotes in his moving papers and another 4 in his reply papers all in minuscule type. One footnote is half a page in length. From this point forward, the parties are prohibited from using footnotes. The next time a party violates this rule, the papers will be returned. In addition, the parties are directed to submit papers with one inch margins or be subject to the same penalty. Second, the plaintiffs, as part of their motion have submitted a document entitled "amended and supplemental complaint." The Court finds this label to be confusing. Accordingly, the Court will refer to this document as the second amended complaint.

### I. Background

Unless otherwise indicated, the following facts are taken from the amended complaint.

#### A. The parties

The plaintiff Healthcare is a New York corporation with its principal office in Great Neck, New York. BTNH is a New York corporation with its principal office in Buffalo, New York. BTNH is the court appointed Receiver of a 200 bed nursing home (the "Nursing Home") located at 1014 Delaware Avenue in Buffalo (the "Premises"), and licensed by the New York State Department of Health. Prior to the appointment of BTNH as Receiver, the Nursing Home was operated by Hamlin Terrace Healthcare Center ("Hamlin"). The Receiver was appointed as the result of Hamlin's provision of inadequate medical care to the home's residents in violation of state and federal law.

The individual plaintiffs Donnellon, Satin, Salerno and Sunshine, are residents of Southern New York and Long Island, and are shareholders of BTNH. Donnellon, Satin and Salerno also serve as BTNH officers and sit on the Board of Directors. The defendant Grosman is a resident of Orlando, Florida.

#### B. The parties' agreement

On May 23, 1995, Healthcare and Grosman executed an agreement referred to by the plaintiffs as the "Terms Sheet." According to the Terms Sheet, the parties would acquire the lease for the property at 1014 Delaware Avenue in order to operate the Nursing Home. BTNH would then be formed to act as a Receiver. Subsequently a new company, "Newco," would be created to replace BTNH as Receiver and become the permanent licensed operator of the Nursing Home in compliance with New York state and federal law. Grosman would be a 49 percent shareholder of Newco.

## C. *Hamlin and CPP*

As stated above, pursuant to the Terms Sheet the parties agreed to bid at a bankruptcy auction to purchase the lease for the 1014 Delaware Avenue premises. The underlying sale of the lease arose from the bankruptcy of, and eviction for failure to pay rent by, the former tenant Hamlin Terrace Health Care Center and the related bankruptcy of the fee owner of the property, Cathedral Park Services ("CPP"). Both bankruptcies are pending in the Middle District of Florida.

According to the plaintiffs, Hamlin forfeited its right to operate the Nursing Home as a result of its rendering substandard health care to its residents in violation of federal and state law. Consequently, a Receiver was appointed to oversee the operation. In addition to forfeiting their right to operate the Nursing Home, the Hamlin partners were further prohibited from participating in the operation of any health care facility in New York State.

Hamlin consists of two partners, Lawrence White ("White"), who was the managing general partner, and his mother Fran Hoechst. The general partner of CPP was an entity known as Cathedral Park Manager ("CPM"). The "beneficial owner" of CPM was Joseph Dimino ("Dimino"), a long time friend and business associate of White. The plaintiffs allege, upon information and belief, that the mortgage loan issued to CPP was insured by the federal Department of Housing and Urban Development ("HUD"). As a result of the default on the mortgage, and other "extraordinary improper activities involved in the default, White and Dimino were barred from participating in the HUD program."

In order to avoid any future entanglement with the New York Department of Health, Healthcare informed Grosman while negotiating the Terms Sheet that as a future operator of the Nursing Home it "would not enter any business relationship with [him], if [he] directly or indirectly was involved in the business of Hamlin, CPP, CPM or had any business relationship with White or Dimino." The existence of such a relationship "would severely threaten Newco's ability to obtain the permanent license required to operate the Nursing Home." The plaintiffs further claim that prior to execution of the Terms Sheet, Grosman represented to Healthcare that he was not involved in a business relationship with any of these individuals or entities. The defendant further stated that he "had never been an officer, director or employee of Hamlin or any other entity owned directly or indirectly by the partners of Hamlin or CPP."

However, according to the Amended Complaint, contrary to these representations "Grosman has a close business relationship with White and/or Domino, with respect to the Premises, the Nursing Home, and other matters...." In support of this allegation, the plaintiffs claim that during the Hamlin bankruptcy proceedings, an entity known as the American Venture Group, Inc. ("AVGI"), a Florida corporation with its principal office in Orlando, professes to be a secured creditor asserting a claim in excess of $1 million. Grosman is the sole officer, manager and stockholder of AVGI. Further, the plaintiffs claim, upon information and belief, that "CPP, Hamlin or their partners" are the "beneficial owners" of AVGI. Moreover, the plaintiffs contend that Grosman is the trustee of an alleged creditor of CPP in the related bankruptcy proceedings. This unspecified creditor was allegedly "found to be an insider of White."

Based on these alleged relationships, the plaintiffs assert that the defendant has "created material conflicts of interest with his obligations to Healthcare, BTNH and Newco, which [he] failed to disclose." As a result, the plaintiff contends that Grosman breached his attendant fiduciary duty and duty of good faith and fair dealing.

In addition, the amended complaint alleges that Grosman engaged in certain transactions adverse to Healthcare, BTNH and Newco in favor of White, Dimino, Hamlin, CPP and CPM. For example, the defendant arranged for Newco to purchase certain equipment from Hamlin at purportedly favorable terms. However, according to the plaintiffs, Hamlin does not own the equipment, and even if it did, its prior default on the lease would prevent the removal of the

equipment. Grosman then caused AVGI to assert a secured claim against the equipment adverse to BTNH's interest.

On a second occasion, the City of Buffalo attempted to foreclose on the a portion of the Premises due to a failure to pay real estate taxes. The plaintiffs allege that although Grosman was aware of the pending foreclosure, he never advised the plaintiffs, instead opting to have AVGI's counsel bid at the foreclosure sale and assign the bid to a third party purportedly under the control of defendant White.

This lawsuit was commenced on March 22, 1996. Based on the foregoing, the amended complaint alleges three causes of action: (1) Healthcare and BTNH assert a claim for "rescission and declaratory judgment;" (2) Healthcare and BTNH allege a claim for "damages;" and (3) the corporate and individual plaintiffs assert a claim for "declaratory judgment." According to the plaintiffs, despite the initiation of this litigation, Grosman notified them by letter dated May 13, 1996 pursuant to Florida law, that he intends to commence an action for treble damages and other relief based on their failure to provide him with his 49 percent stock interest in BTNH, an accounting of income and expenses for BTNH, and delivery of unspecified documents previously requested. On August 30, 1996, this Court denied the defendant's motion to dismiss for improper venue. By answer dated September 9, 1996, Grosman denied all material allegations and asserted eleven counterclaims as follows: (1) and (2) for declaratory relief; (3) breach of contract; (4) fraud; (5) defamation; (6) tortious interference with contractual relations; (7) conversion (8) conversion and unjust enrichment; (9) and (10) for "civil theft;" and (11) breach of fiduciary obligations.

As set forth above, presently before the Court are: (1) the defendant's motion to dismiss and for judgment on the pleadings with respect to the first and second counts of the amended complaint, and judgment on the pleadings with respect to his first counterclaim; and (2) the plaintiff's cross motion for leave to file a second amended complaint.

## II. *Discussion*

### A. *The standards for motions to dismiss for failure to state a claim and for judgment on the pleadings*

The standards for deciding a motion to dismiss for failure to state a claim and for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(b)(6) and 12(c) are the same. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994). A complaint is to be dismissed for failure to state a claim, if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (addressing Rule 12(b)(6)); *accord Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir.1994) (same); *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991) (same). In addition, such a motion is addressed solely to the face of a pleading, and "[t]he court's function ... is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

In assessing the sufficiency of a pleading on a motion to dismiss, "all factual allegations in the complaint must be taken as true," *La Bounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991) (addressing Rule 12(b)(6)); *Sheppard*, 18 F.3d at 150 (addressing Rule 12(c)), and all reasonable inferences must be construed in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (addressing Rule 12(b)(6)); *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994) (addressing Rule 12(c)).

In addition to the foregoing standard governing Rule 12(b)(6) motions, the Court must be mindful of the relevant rules of pleading. In general, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice". Fed.R.Civ.P. 8(f). However, because the rescission claims at issue are based in part on alleged of fraud, the more stringent requirements of Rule 9(b) apply to

these claims, requiring that "all averments of fraud ... shall be stated with particularity." Fed.R.Civ.P. 9(b).

### B. *Grosman's motion to dismiss*

■ Grosman moves to dismiss and for judgment on the pleadings with respect to the first and second causes of action for rescission and damages. These claims are based on the defendant's alleged material misrepresentations which induced the plaintiffs to execute the Terms Sheet. The parties agree that the proper analysis turns on the Court's interpretation of the rescission doctrine based on fraud in the inducement.

At the outset, the Court notes that there may be an issue as to whether New York or Florida law controls this case. *See* Def. Mem. of Law at 3 n. 3. Under New York law, "[t]he elements of a claim for rescission based on fraud are misrepresentation, concealment or nondisclosure of a material fact; an intent to deceive; and an injury resulting from justifiable reliance by the aggrieved party." *Allen*, 945 F.2d at 44. Similarly, under Florida law, a court may rescind a contract for fraud, *Royal v. Parado*, 462 So.2d 849, 855 (Fla.Ct.App.1985), defined as a material misrepresentation, which the defendant knew or should have known was false, with the intent to induce reliance and enter a contract, where justifiable reliance caused the injury. *Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1425 (S.D.Fla.1996); *Jankovich v. Bowen*, 844 F.Supp. 743, 747 (S.D.Fla.1994), citing, *Schubot v. McDonalds Corp.*, 757 F.Supp. 1351, 1355 (S.D.Fla.1990), *aff'd*, 963 F.2d 385 (11th Cir.1992). However, because the elements of these claims are essentially the same, resolution of the choice of law issue is not necessary at this time. To ease the analysis, the Court will review the parties' motions under New York law.

The parties agree that the first two causes of action for rescission and damages are governed by the heightened pleading standards contained in Fed.R.Civ.P. 9(b). *See Allen*, 945 F.2d at 44 (applying Rule 9(b) to rescission claims). One of the primary purposes of the specificity requirement of Rule 9(b) "is to insure that the defendant receives fair notice of plaintiff's claim, and is thus able to pre-pare a defense," *Hutton v. Klabal*, 726 F.Supp. 67, 72 (S.D.N.Y.1989), *citing, Di Vittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987), as well as to protect a defendant's reputation and to avoid strike suits. *See Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir.1990); *Philan Ins., Ltd. v. Frank B. Hall & Co.*, 712 F.Supp. 339, 342 (S.D.N.Y.1989); *United States v. Rivieccio*, 661 F.Supp. 281, 290 (E.D.N.Y.1987). To satisfy the particularity requirement of Rule 9(b), the allegations should "specify the time, place, speaker, and content of the alleged misrepresentations." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Di Vittorio*, 822 F.2d at 1247, *citing, Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986). However, "[b]ecause it would be unrealistic to expect a plaintiff to read a defendant's actual state of mind, ... [Rule] 9(b) permits plaintiffs to allege fraudulent intent generally while the circumstances amounting to fraud must be averred with particularity." *Powers v. British Vita P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995).

Applying these standards, the defendant attacks the amended complaint for failure to plead several of the elements of rescission with the required particularity, namely: (1) the existence of an injury; (2) the materiality of the alleged misrepresentations; and (3) the reasonableness of the plaintiffs' reliance on the alleged misrepresentations.

Initially, the defendant claims that the plaintiffs' claims for rescission and damages are insufficient because the amended complaint fails to allege a cognizable injury. The only injury alleged is that "Plaintiffs Healthcare and BTNH have been irreparably injured by Grosman's misrepresentations and omissions. Newco's ability to be granted a permanent license to operate the Nursing Home is severely threatened by Grosman's relationships with White and/or Dimino." Compl. ¶ 42. According to the plaintiffs, this "increased risk that [their] venture [will] be denied approval of New York State and federal agencies necessary to operate the Nursing Home," and the attendant damage to their "reputation ... and ... relationships

with critical government agencies," because of Grosman's misrepresentations constitute sufficient injuries. The Court disagrees.

The plaintiffs have failed to allege a cognizable injury. There is no actual harm. As stated above, the plaintiffs claim only that there is a threat that they may not obtain the necessary government approvals and that their reputation may be affected. These allegations are too speculative to survive even the most generous application of Fed. R.Civ.P. 12(b)(6). Accordingly, the defendant's motion to dismiss the first two claims for rescission and damages is granted. *See Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994) (to sustain a claim for fraud, the misrepresentation must be the direct and proximate cause of an injury).

In reaching this conclusion, the Court finds that the cases cited by the plaintiffs, *Rosen v. Spanierman*, 894 F.2d 28, 35 (2d Cir.1990) and *Romano v. Key Bank*, 90 A.D.2d 679, 680, 455 N.Y.S.2d 879, 881 (4th Dep't 1982), are distinguishable. In *Rosen*, one of the plaintiffs negotiated the sale price of a painting based on a representation as to its authenticity. The purchase money was supplied by his mother-in-law. The artwork turned out to be a fake. The Second Circuit found that there was sufficient injury to sustain a common law fraud claim because if the plaintiff had known about the misrepresentations regarding the painting's authenticity, he could have purchased another painting. In the Court's view, the injury in *Rosen* is real and significant. When the fake painting was purchased, the plaintiffs lost the value of the original, a demonstrable injury.

In *Romano,* the plaintiff sued a Bank and one of its officers arguing that he was defrauded when he signed a personal note in reliance on the promise that it would converted to a corporate obligation of the plaintiff's business. No such conversion was made. Accordingly, when the business failed, the plaintiff was personally liable on the note. The Bank argued that there was no injury because the plaintiff was already a personal guarantor of all outstanding corporate loans. The Fourth Department disagreed, holding that there was sufficient injury because personal liability and guarantor liability were not synonymous. A guarantor is subrogated to rights of the original creditor after his obligations are satisfied. In *Romano*, the distinction was that of the plaintiff being a secured as opposed to an unsecured creditor, a difference in rights with consequences.

The Court further recognizes that the defendant has also moved to dismiss the first and second causes of action for rescission and damages, for failure to allege that any misrepresentations were material or that the reliance on the alleged misrepresentations was reasonable. However, because the Court has already granted Grosman's motion based on the plaintiffs' failure to allege a sufficient injury, these alternative arguments need not be considered. Nevertheless, Court notes for the sake of clarity and future use, that if the plaintiffs had alleged a cognizable injury, the representations allegedly replied upon, namely Grosman's statements regarding his relationship with Hamlin, White, Dimino, etc., would be material. Further, despite the defendant's arguments to the contrary, the Court finds that any reliance on these statements would also have been reasonable.

### C. *The standard for leave to file a second amended complaint*

Having granted the defendant's notion to dismiss the first and second causes of action contained in the amended complaint the Court now turns to the plaintiffs' motion for leave to file a second amended complaint pursuant to Fed.R.Civ.P. 15 in the form attached to the moving papers. Although Fed. R.Civ.P. 15(a) requires that "leave to amend shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court stated in *Foman* that denial of a Rule 15(a) motion may be appropriate in instances of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] *futility of the amendment . . . ." Foman*, 371 U.S. at 182, 83

S.Ct. at 230 (emphasis supplied); *see Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995); *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (recognizing that where amendment of the complaint is unlikely to be productive, it is not an abuse of discretion to deny a Rule 15 motion).

### D. *The plaintiffs' motion for leave to file a second amended complaint*

■ Applying these standards, the Court grants the plaintiffs' motion for leave to file a second amended complaint. As stated above, the first two causes of action contained in the amended complaint fail to state a cause of action because the plaintiffs have not alleged a cognizable injury. The proposed second amended complaint makes several attempts to correct the defect. The first cause of action, retitled "fraudulent inducement: rescission and declaratory judgment," alleges the following with respect to an injury:

88. Plaintiffs Healthcare and BTNH have been irreparably injured by Grosman's misrepresentations and omissions. BTNH's ability to continue as Receiver of the Nursing Home and lessee of the Premises, and Newco's ability to be granted a permanent license to operate the Nursing Home and succeed to the lease, are severely threatened by Grosman's relationships with White and/or Dimino, so long as Grosman claims to have any interest in BTNH or Newco.

89. The HUD Regulatory Agreement under which the Nursing Home must be operated, ... requires that HUD must approve any change in or transfer of ownership of the lessee-operator, and that failure to obtain HUD's written approval would constitute a default under the Regulatory Agreement. HUD has now taken the position that, due to the Terms Sheet, Plaintiff BTNH can not execute the standard Regulatory Agreement required by HUD in order for BTNH to be a tenant on the lease of the Nursing Home property, because Grosman is so intimately related to White as to make White, [an individual prohibited from running the Nursing Home,] a principal of BTNH within the meaning of applicable law and regulations.... In the Hamlin bankruptcy proceedings, in October, [sic] 1996 HUD, through the U.S. Department of Justice, has taken the same position in opposing the debtor's plan of reorganization....

Compl. ¶¶ 88, 89.

These allegations are somewhat difficult to assess. Nevertheless, the language located in the middle of paragraph 89, stating that "HUD has now taken the position that, due to the Terms Sheet, Plaintiff BTNH can not execute the standard Regulatory Agreement required by HUD in order for BTNH to be a tenant on the lease of the Nursing Home property, because Grosman is so intimately related to White as to make White ... a principal of BTNH within the meaning of the applicable law and regulations," indicates that the plaintiffs may have suffered sufficient injury. If, by this language, the plaintiffs mean that HUD has taken some affirmative adverse action, namely denying required approval to the Nursing Home, then in the Court's view there is a cognizable injury. Accordingly, while the Court finds that the proposed second amended complaint is insufficient in its present form, the plaintiffs are granted leave to file a second amended complaint with respect to the first cause of action to include a cognizable injury.

■ With respect to the proposed amended second cause of action, retitled, "fraud and breach of fiduciary duty: damages," the plaintiffs allege the following injuries:

95. As a proximate result of Grosman's various actions, omissions, and failure to disclose, and breaches of duty, referred to hereinabove, Plaintiffs Healthcare and BTNH have suffered damages, including but not limited to:

(a) internal and external expenses including but not limited to attorneys fees, related to investigating White's, Grosman's and others' activities, having otherwise unnecessary dealings with federal and state regulatory authorities, and ob-

serving or participating in various bankruptcy and other court proceedings;

(b) expenses incurred in replacing Grosman's anticipated contribution to the Nursing Home venture;

(c) incurring otherwise unnecessary delays and uncertainties in the normal process of having Newco approved as the permanent lessee/operator of the Nursing Home and commencing normal operations; and

(d) loss of professional reputation among relevant regulatory agencies and in the industry.

Compl. ¶ 95.

In the Court's view, these revised allegations contained in the second cause of action of the proposed second amended complaint are insufficient to constitute a cognizable injury. As this Court recognized in *Automotive Elec. Serv. Corp. v. Association of Automotive Aftermarket Distributors*, 747 F.Supp. 1483, 1507–08 (E.D.N.Y.1990), in general, a litigant may not rely on attorneys' fees or expenses to state an injury in support of a cause of action sounding in tort. The plaintiffs do not cite any authority in the case law or otherwise that would warrant invocation of an exception to this rule. Accordingly, the Court finds that any alleged fees or costs, or other unspecified "internal or external expenses" are insufficient to allege an injury. Similarly, the Court finds that the remaining allegations of injury, such as "unnecessary delays and uncertainties," and "loss of professional reputation" too speculative to constitute a cognizable injury. Nevertheless, to the extent that the plaintiffs are able to allege an affirmative and adverse action by HUD, or any other governmental agency as set forth above, such as the denial of approval to operate the Nursing Home, the plaintiffs' motion for leave to file a second amended complaint is granted with respect to the second cause of action.

With regard to amendment of the complaint however, the plaintiff is cautioned about perfunctory substantive or cosmetic changes. The Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, 1990 Transfer Binder, Fed. Sec. L. Rep. (CCH), ¶ 95,287, 1990 WL 71502 (S.D.N.Y.1990):

[I]t has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.

In the event the plaintiff files a second amended complaint which does not allege a cognizable injury, stating instead only the threat of denial of some type of government approval in the future, the Court may take appropriate action in this regard.

### E. *Grosman's first counterclaim*

Finally, the defendant moves for judgment on the pleadings with respect to his first counterclaim seeking a declaration that the Terms Sheet is a binding and enforceable contract. According to Grosman, "[t]he only defense to enforceability of the [Terms Sheet] raised by Plaintiffs is the defense of fraud in the inducement.... Since that defense is, at best premature (in the absence of any injury), Mr. Grosman is entitled to judgment on the First Counterclaim ... that the [Terms Sheet] is binding and enforceable...." Def. Mem. of Law at 14–15. The Court disagrees.

As set forth above, the Court has granted the plaintiffs leave to file a second amended complaint with regard to their first and second causes of action which attack the validity of the Terms Sheet. Accordingly, it would be premature to entertain the defendant's motion for judgment on the pleadings with respect to the first counterclaim seeking a declaration as to the Terms Sheet's validity.

### III. *Conclusion*

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendant's motion to dismiss the plaintiffs' first and second cause of action is granted; it is further

ORDERED, that the plaintiffs' motion for leave to file a second amended complaint as described above is granted and the plaintiff shall serve the second amended complaint within 20 days from the date of this Memorandum of Decision and Order; and it is further

ORDERED, that the defendant's motion for judgment on the pleadings with respect to the first counterclaim is denied.

SO ORDERED.